WHITE CABS ET AL V. WILLIAM D. MOORE.

No. A-1190. Decided June 18, 1947.
Rehearing overruled July 16, 1947.
(203 S. W., 2d Series, 200.)

J. *Edward Johnson*, of Brownwood, for petitioners.

*Lee Curtis*, of Belton, *E. M. Davis*, of Brownwood, and
*J. V. Hammett*, of Lampasas, for respondent.

Mr. Justice Smedley delivered the opinion of the Court.

This is a suit for damages on account of personal injuries suffered by respondent William D. Moore in a collision between a motorcycle ridden by him and a taxicab owned by petitioner White Cabs and driven by petitioner Roscoe M. Petty. The trial court's judgment in favor of respondent against petitioners for $16,000.00 was affirmed by the Court of Civil Appeals. 199 S W. (2d) 202.

Several points of error in the application for the writ complain of misconduct of the jury. The first of these relates to the discussion of attorney's fees. On the hearing of the motion for new trial all of the jurors testified, being interrogated at length about their discussion of attorney's fees and about other alleged misconduct. The trial court overruled the motion for new trial, filing findings of fact, the substance of which, relating to the discussion of attorney's fees, follows:

The jurors answered the first thirteen special issues submitted in the court's charge, passed the fourteenth special issue, which was as to the amount of damages, and answered the remaining issues numbered fifteen to twenty-eight, inclusive. Thereupon they returned to the fourteenth issue and began to discuss the amount of damages to be awarded. Before the first ballot was taken on this issue the foreman asked the jurors what they thought the damages should be. One answered $20,-000.00, another $17,500, another $15,000.00, and another $10,-000.00. A vote by ballot was taken, five jurors voting for $20,-000.00, one for $17,500.00, and five for $15,000.00. The foreman stated that he would agree with the other eleven jurors on any amount within the limits of $15,000.00 and $20,000.00.

A discussion followed, in which the five jurors who had voted for $15,000.00 on the first ballot said that although they believed the plaintiff had been damaged in a greater amount than $15,000.00, they did not want to award more for various reasons, among the reasons being that the plaintiff would probably receive a pension from the government on account of his injuries; that because he was a soldier he had incurred no hospital or doctor's bill; that they did not want to bankrupt the defendants; and that the defendants would be less likely to appeal the case if the amount awarded was not too great. There was some discussion of the question whether the defendants carried insurance.

While the jury was attempting to answer the fourteenth special issue as to the amount of damages, and after the first ballot had been taken, some of the jurors said they were wondering what percentage of the recovery the plaintiff would have to pay to his lawyers. One juror "imagined" that he would pay ten per cent, another thirty per cent, and another fifty per cent. Some of the jurors said they wanted the plaintiff to have enough money left after paying his attorneys to get a good start in life. The foreman stopped the discussion by telling the jurors "that was something that should not be discussed." The subject was mentioned again briefly and the discussion was again stopped by the foreman. "The time consumed in the discussion of attorneys' fees was probably a minute or two." The discussion involved several members of the jury before it was stopped by the foreman. Following these discussions the jury answered the fourteenth special issue by awarding $16,000.00 as damages. The trial court concluded that no injury probably resulted from the jury's misconduct.

■ Whether wisely or not, in this State we have been committed since 1905, by statute and by rule, to the practice of permitting jurors to testify in open court to their conduct in the jury room and of granting new trials and reversing judgments on account of material misconduct thus proven. Article 2234, Revised Civil Statutes of 1925; Rule 327, Texas Rules of Civil Procedure; McCormick and Ray's Texas Law of Evidence, Sections 181-185, pp. 264-271. The rule as to the duty of the courts under the statute, often announced and applied, was thus stated by Justice Greenwood in Casstevens v. Texas & Pacific Ry. Co., 119 Texas 456, 460, 32 S. W. (2d) 637: "But once material misconduct in arriving at a verdict is shown by undisputed facts, or is found on conflicting evidence, it becomes the duty of the courts to vacate the verdict unless the party seeking to uphold same removes all reasonable doubt as to the misconduct having resulted to the prejudice of the complaining party."

The rule was changed in the adoption of Texas Rules of Civil Procedure so that now the court, whether trial or appellate, grants a new trial on account of misconduct of the jury only when the misconduct is material and "it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." Rule 327.

■ The question whether injury probably resulted to the complaining party from the misconduct is not a question of fact,

but is a question of law to be decided in the first instance by the trial court and on appeal by the reviewing court. Barrington v. Duncan, 140 Texas 510, 515, 169 S. W. (2d) 462; City of Houston v. Quinones, 142 Texas 282, 290, 177 S. W. (2d) 259; Prudential Fire Ins. Co. v. United Gas Corporation, 145 Texas 257, 199 S. W. (2d) 767; Motley v. Mielsch, 145 Texas 557, 200 S. W. (2d) 622.

■ A jury's discussion, when considering the amount of the damages to be awarded the plaintiff, of the attorney's fees that the plaintiff may be required to pay out of what he recovers is material misconduct and is calculated to prejudice the rights of the defendant. Texas & Pacific Ry. Co. v. Gillette, 125 Texas 563, 567, 83 S. W. (2d) 307. See also St. Louis Southwestern Ry. Co. v. Lewis (Com. App.) 5 S. W. (2d) 765, 10 S. W. (2d) 534; City of Waco v. Darnell, (Com. App.) 35 S. W. (2d) 134; Texas & Pacific Ry. Co. v. Mix, 193 S. W. (2d) 542.

There are cases holding that the mere mention by a juror of attorney's fees promptly rebuked and not thereafter considered is not such misconduct as to require the vacation of the verdict. Bradley v. Texas & Pacific Ry. Co. (Com. App.) 1 S. W. (2d) 861; St. Louis Southwestern Ry. Co. v. Gilpin, 73 S. W. (2d) 1054; International-Great Northern R. Co. v. Hawthorne, 90 S. W. (2d) 895. In the instant case, however, the trial court's findings and the evidence which we shall briefly discuss show more than a mere mention of attorney's fees. They show a considerable discussion of them under circumstances that were not present in the cases last cited.

The trial court, in the beginning of the charge, directed the jurors to confine their deliberations to the law as given them by the court, and to the facts introduced in evidence, and to allow nothing else to sway or influence them in arriving at their verdict. The fourteenth special issue was so worded as to limit the damages to be awarded the plaintiff to reasonable compensation for physical and mental suffering, past and future, and for loss of earning capacity probably to be suffered in the future.

All of the jurors testified on the hearing of the motion for new trial that attorney's fees were discussed while they were considering the answer to be given to the fourteenth special issue and after all the other special issues had been answered. It is shown without contradiction that the discussion occurred after five jurors had voted on a first ballot for $20,000.00, one

for $17,500.00, and five for $15,000.00. Ten of the jurors testified that there was discussion as to the percentage that the plaintiff's lawyers would receive out of the amount awarded, in which several jurors expressed opinions as to what the percentage would be, some saying ten per cent, others twenty or thirty or fifty per cent. Nine of the jurors testified that some of the jurors said they wanted the plaintiff to have enough after the lawyers were paid to give him a good start in business. The foreman stopped the discussion of attorney's fees, telling the jurors that what the attorneys would get had nothing to do with the case. The subject was again mentioned briefly, before the issue was answered and again the discussion was stopped by the foreman. There is no material conflict in the testimony of the jurors as to the discussion of attorney's fees, except that there is some difference in the opinions they expressed about the time consumed in the discussion of them. One testified that it was a minute or two, another a few minutes, another a good many minutes, and another about five minutes.

It clearly appears from the record that while the jurors were endeavoring to reach an agreement as to the amount of the verdict, those who had voted for $15,000.00 on the first ballot, or some of them, while expressing the belief that even a much greater amount would not compensate the plaintiff for his injuries, argued in favor of $15,000.00, giving as a reason that the plaintiff would probably receive a pension and other reasons not based upon facts in evidence; and that those who had voted for $20,000.00, or some of them, in support of their contention for the greater amount, brought into the discussion the question of attorney's fees, that is a division with the attorneys of the amount recovered, and also made the argument that the plaintiff ought to have enough left after the attorneys had been paid to give him a good start in business. One of the jurors testified without contradiction that after the first ballot as to the amount of the verdict had been taken "from then on" the low men were trying to get the high men down and the high men were trying to get the low men up, and that it it was that deliberation that the question of attorney's fees was discussed, and the low men were making their argument "as to why they did not want to give more than $15,000.00."

We do not know that the five jurors who had voted for $15,-000.00 were in fact induced by the discussion of attorney's fees to agree to a verdict of $16,000.00, for we cannot know what their mental processes were. But we believe that the reasonable conclusion from the testimony of the jurors and from the entire

record is that they were *probably* induced by that discussion to agree to the answer that was made. The five jurors voted on the first ballot for $15,000.00. After that the misconduct occurred. It was material and of such nature that it was calculated to induce agreement to a greater amount. After the misconduct occurred the greater amount, $16,000.00, was agreed to by all of the jurors.

■ We are not unmindful of the severity of respondent's injuries. It is doubtless true that the verdict is not excessive. Petitioners made no complaint in the Court of Civil Appeals of excessiveness in the verdict. But even though we may believe from the evidence in the record as to respondent's injuries that the verdict for $16,000.00 is not excessive, or that a verdict for a greater amount would not be excessive, we would not be justified in holding by reason of that conclusion that no probable injury resulted to petitioners from the misconduct of the jury. That would be an invasion of the province of the jury. Damages in a personal injury suit are unliquidated. The jury has the authority and the duty to measure them from the facts in evidence. It is our duty to apply to the record in this case the test prescribed by Rule 327. After careful examination of the entire record, our opinion is that the misconduct, the discussion of attorney's fees, was material misconduct, and that it reasonably appears from the evidence, both on the hearing of the motion and the trial of the case, and from the record as a whole, that injury probably resulted to petitioners from that misconduct.

Other points presented by the application for the writ need not be discussed. They should not arise on another trial. The judgments of the district court and the Court of Civil Appeals are reversed and the cause is remanded to the district court for new trial.

Opinion delivered June 18, 1947.

Rehearing overruled July 16, 1947.