The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Dale CARTER, Appellee.

No. 3257.

Court of Civil Appeals of Texas.

Eastland.

Dec. 14, 1956.

Rehearing Denied Feb. 1, 1957.

232

Mays & Leonard, Sweetwater, for appellant.

Pat Beene, Snyder, Lloyd L. Davis, Ft. Worth, for appellee.

COLLINGS, Justice.

Dale Carter brought this suit against The Travelers Insurance Company to recover workman's compensation benefits for an injury sustained by him on October 18, 1954, while working in the course of his employment with Robinson Drilling Company in Nolan County, Texas. The case was submitted to a jury upon special issues and based upon the jury's answer to certain of these issues and other admitted facts judgment was rendered awarding Dale Carter recovery for total and permanent incapacity. The insurance company has brought this appeal.

It was agreed by appellant insurance company that appellee Carter was injured in the course of his employment with Robinson Drilling Company in Nolan County on October 18, 1954; that Carter was at the time of his injury covered by a policy of workman's compensation insurance issued by the company to Carter's employer; that as a result of the injury which Carter received he sustained a herniated intervertebral disc between the fourth and fifth lumbar vertebrae and between the fifth lumbar vertebrae and the first sacral vertebrae; that Carter's average weekly wages prior to his injury were $110; that all prerequisites to the filing of suit in the District Court were timely complied with, and that the only issue to be tried was the na-

ture, extent and duration of Carter's incapacity to work, resulting from the injury he received on October 18, 1954.

It was found by the jury in answer to special issue No. 1 that the total incapacity sustained by appellee Dale Carter as a result of the injury received by him on October 18, 1954 was permanent. In appellant's fourth and fifth points it is contended, in effect, that the jury's answer to special issue No. 1 is without support in the evidence, or is so grossly against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

It was admitted by appellant that at the time of the trial Dale Carter was still totally incapacitated and that appellant had been and expected to continue making weekly payments for total temporary disability until January 1, 1956. Dr. Robert F. Wasson, a general practitioner, who had been treating appellee Carter for more than a year, testified that he was totally and permanently disabled; that although Carter would be able to do a lot of work he was permanently disabled from doing heavy lifting or straining and that type of work, the kind of work that appellee had been doing, that is, roughnecking.

Dr. Edward T. Driscoll was called as a witness by appellant. The evidence indicated that he was a competent qualified orthopedist and a member of the American Board of Orthopedic Survey. He had been engaged in orthopedic practice for ten or twelve years. Dr. Driscoll, after being recommended to appellee Carter by Dr. Wasson, made a thorough examination of appellee and performed an operation to remedy his condition. Dr. Driscoll testified that he had performed approximately 200 operations of a similar nature to that which he performed upon Dale Carter, that is, removing two herniated intervertebral discs and doing a spinal fusion at the joints affected. Dr. Driscoll testified that X-ray pictures and examinations of appellee Carter after the operation showed the operation to be a success; that when

appellee left the hospital he told Dr. Driscoll that he was entirely free from pain and, at various times when he reported back to the Doctor after the operation, stated that he was better and finally in November of 1955 ceased to return for further examination or treatment. Dr. Driscoll testified that in his opinion at the end of six months following the operation, or about January 1, 1956, appellee Dale Carter could resume work with not more than 10 or 15 per cent. disability.

Appellant urges in effect that a consideration of the testimony of Dr. Driscoll and of his qualifications when compared with the testimony of Dr. Wasson and his qualifications demonstrates that the jury finding of permanent total incapacity is without support in the evidence, or at least is against the great weight and preponderance of the evidence. We cannot agree with these contentions. The credibility of the witnesses and the weight to be given their testimony is a matter for jury determination. The evidence, in our opinion, presented a fact issue for the jury on the question of whether the admitted total incapacity of appellee Carter was permanent or temporary. The finding was not so grossly against the weight and preponderance of the evidence as to be clearly wrong.

In appellant's first point it is urged that the use of a dictionary by the jury during its deliberations to obtain a definition of legal terms which had been properly defined in the court's charge constituted prejudicial misconduct and required a reversal of the judgment. The evidence shows that the jury retired to consider its verdict on the morning of December 1, 1955. The jury was unable to agree before lunch time upon an answer to special issue No. 1, which inquired whether the total incapacity sustained by appellee Carter was permanent or temporary. The jury was excused for the lunch period and when the members of the jury came together in the afternoon for further deliberation the foreman brought two clippings which he

had cut out of a dictionary and read them to the jury. The evidence does not show with certainty what the words were. But assuming appellant's position to be correct that the words were "total" and "incapacitated" we cannot agree that reversible error is shown. The definition of "total incapacity" as given in the court's charge to the jury was:

"You are instructed that by the phrase 'Total Incapacity', as used in this charge does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated."

In Webster's Dictionary the word "total" is defined as being all, the whole of, pertaining to or referring to the whole of a thing as distinguished from partial. The word "incapacity" is defined as being the quality or state of being incapable; the lack of physical or intellectual power; inability. It is apparent that the definitions of the terms which the foreman read to the jury were more favorable to appellant's contention that appellee was not totally incapacitated than the definition of "total incapacity" given to the jury by the trial court. It does not reasonably appear that injury probably resulted to appellant as required by Rule 327, Texas Rules of Civil Procedure, as a prerequisite for the granting of a new trial. Also see McGee v. McGee, Tex.Civ.App., 237 S.W.2d 778 (N. R.E.); Bookhout v. McGeorge, Tex.Civ. App., 65 S.W.2d 512, 513. Appellant's first point is overruled.

In appellant's second and third points it is urged that there was jury misconduct requiring a reversal of the judgment in that the jury received unsworn testimony from one of its members regarding that juror's personal experience in attempting to obtain employment while partially incapacitated and other unsworn testimony

from such juror to the effect that appellee Carter would have to sign a waiver "covering his 15 per cent. permanent partial disability in order to obtain employment".

Only four of the jurors were called as witnesses on the hearing of the motion for a new trial. One of these jurors, a Mrs. Duckett, testified that during the jury's deliberations another juror whose name she did not remember stated that he had a hernia and that he had been unable to get a job with the United States Gypsum Company at Sweetwater or with the Lone Star Cement Company at Maryneal, or with any oil company unless he would sign a waiver of his 15 per cent. incapacity. The witness testified "there was some discussion between the men about having to sign a waiver because of disabilities that they had had, and that they felt that he could not get a job with any major oil company, the U. S. Gyp or the Maryneal plant unless he did sign a waiver and that not many men would take a job like that". Mrs. Duckett further testified that another juror warned the jury that this discussion was improper, but that the discussion continued after the warning was given.

In connection with the above points it is the contention of appellee that there is a conflict between the testimony of the other jurors and that of Mrs. Duckett, and in such cases it is for the trier of the facts to determine whether or not there was jury misconduct. It is well settled that where there is a conflict in the evidence on whether or not misconduct occurred the question for determination is one of fact and the decision of the trial court is final. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. We cannot agree however, that the evidence at the hearing of the motion for a new trial presents a question of fact. Mrs. Duckett's positive and uncontroverted testimony shows in effect that one of the jurors related his own personal experience in obtaining employment while he was

suffering from incapacity by reason of a hernia and expressed the opinion that appellee would have to sign a waiver of any partial incapacity he had in order to obtain employment.

Three other jurors testified concerning this matter. Neither of them denied Mrs. Duckett's testimony. Mr. Parker, the foreman of the jury, testified that he didn't remember. He stated "It could have taken place, I don't say that it didn't, because I was probably reading the charge." Mr. Gee, another of the jurors, stated that it was possible that something was said about appellee Carter having to get a waiver to get a job; that it could have been said but that he did not remember hearing it. Mr. Tom Miller, the last juror who testified, stated on direct examination that he did not remember any statement to the jury to the effect that appellee Carter would have to get a waiver before he could go to work for some company. Then on cross examination Mr. Miller said "Well, I wouldn't say that I didn't hear it, because I did hear him mention something about it, but I'll tell you, Mr. Gee spoke up and told him that that was not to be considered, that that didn't enter into this case, that we were to consider the evidence as given in this case and we probably forgot all about that—in fact, I never did even think about it any more."

The testimony of neither of the other three jurors can be construed as a denial of Mrs. Duckett's statement and account of the jury misconduct. The effect of the testimony of two of the jurors was that they didn't hear it or didn't remember hearing it. Neither by positive statement nor by implication do they indicate that they were at all times during the jury deliberations in position to have heard the matters related by Mrs. Duckett if they had occurred and that it would have been impossible or at least improbable for such misconduct to have occurred without being heard by them. Mr. Miller in effect admitted that the unidentified juror did give unsworn testimony to his fellow jurors concerning his disability on account of a hernia and the inability of one so disabled to get a job without signing a waiver. He also testified, as did Mrs. Duckett, that another of the jurors warned the jury that it was improper to consider these matters. But Mr. Miller did not deny Mrs. Duckett's statement that the discussion continued after the warning was given. He simply expressed the opinion that "they probably forgot all about that", and further stated that he never did think about it any more. Mrs. Duckett's testimony concerning the jury misconduct therefore stands unchallenged. There is no conflicting testimony upon which to base a finding of fact contrary to her version of the matter.

The remaining question is whether the undisputed misconduct of the jury shown by Mrs. Duckett's testimony was such that it was calculated to and probably did prejudice the rights of the appellant. Rule 327, supra. In our opinion this question must be answered in the affirmative. The question of whether Dale Carter's total incapacity was permanent or only temporary was hotly contested. Dr. Wasson testified that appellee was totally and permanently incapacitated. Dr. Driscoll testified that in his opinion Carter would be able to resume work on or about January 1, 1956, with not more than 10 or 15 per cent. disability. In this state of the evidence we cannot say that no probable injury resulted to appellant by reason of the unsworn testimony of the unidentified juror to the effect that he couldn't get a job without signing a waiver of his partial disability and that Carter would probably have to do the same if a jury found that he was only disabled to the extent of 15 per cent. Although warned of the impropriety of such misconduct the discussion continued. We are of the opinion, after a consideration of the entire record, that there was probable injury to appellant from the misconduct shown

by the undisputed evidence. White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200.

The judgment of the trial court is reversed and the cause is remanded for another trial.