J. F. BARDWELL, Jr., Appellant,

v.

Herman E. EVANS, Appellee.

No. 16014.

Court of Civil Appeals of Texas.

Fort Worth.

June 19, 1959.

**18**

Hicks, Dollahon, Boss & Wohlt, and Willard E. Dollahon, Houston, for appellant.

James P. Simpson and Carl H. Hagan, Texas City, for appellee.

BOYD, Justice.

Herman E. Evans recovered judgment for personal injuries and medical expenses in the amount of $10,204.50 alleged to have been sustained when an automobile driven by J. F. Bardwell, Jr., collided with an automobile driven by Evans. Bardwell appeals.

Appellant has nine points for reversal, but in view of our reversal of the judgment under the ninth point, which involves alleged misconduct of the jury, we deem it unnecessary to discuss the others, as the matters there complained of are not likely to arise, at least in the present form, on another trial; and which points, if sustained, would not require rendition of the judgment.

Several jurors testified on the motion for new trial. Juror Mattes said that he wanted to give appellee only his hospital bills, which he thought were $240.50; "Q. And then did any one say anything or not that caused you to change your mind about giving more than $240.50? A. Well, Mr. Floyd brought up something about workman's compensation Act, and he said that a man was entitled to four hundred weeks at $25.00 a week, which would, I think he figured it out to be $10,000.00. * * * A. Well, he said, that under the laws of Texas a man is entitled to that amount of money, four hundred weeks at $25.00 a week, which would amount to $10,000.00. He said, 'That's the law.' * * * A. Well, that's the only thing that I remember him saying about it. He says that the law required a man to get that much money. * * *

"Q. All right. Then, after you heard Mr. Floyd say that it was the law in Texas that Mr. Evans was entitled to workman's compensation insurance that you then changed your vote about how much money to give Mr. Evans? A. Yes sir. I did, because I figured if that was the law, that was what the man was entitled to.

"Q. Did that affect your decision to give more than $240.50? * * * A. Yes sir. I did.

"Q. Would you have given more than $240.50 if he had not brought that up to you? A. No sir. I would not have. * * *

"Q. Mr. Mattes, you, of course, understood that this was not a workman's compensation case, did you not, when we were trying it? A. No sir, I didn't understand that part of it, I'll be honest with you. * * * A. Well, I just took it—I figured on giving the man $240.50 if I'm not mistaken, that's the amount, that's what I had in my mind of giving the man until this workman's compensation come up and I just figured if that was the law, that's what the man should have. * * *

"Q. * * * In other words, you hadn't then calculated what sum you wanted to give for such items as pain and suf-

fering, had you? A. That's what I figured over all of paying the man.

"Q. But then, after that followed a large amount of discussion about such things as pain and suffering, didn't it? A. Yes sir.

"Q. That was discussed? A. Yes sir.

"Q. And of course you were influenced by those discussions, were you not? A. No sir. * * *

"Q. The reasoning of the other jurors had no effects on your mind? A. Not on that part of it.

"Q. So what you are telling the Court is that you disregarded the Court's instructions to you and picked up some point that some juror made? A. Well, I just figured it out in my own mind as that is what I thought was fair and square, and what I thought a juror should do.

"Q. Well, actually you thought the sum of $10,000.00 was fair and square for this injured man, didn't you? A. No sir."

Juror Jackson testified that before the talk about the "State compensation" was made he had decided that appellee was entitled to $250.00, "The expense of the medic"; he had heard all the evidence about pain and suffering and about his having a limp when he tried to climb stairs; he had taken all those things into consideration and still felt that appellee was entitled to only $250.00. "A. Well, I had my mind made up to the same thing, the hospital bill, which it was two-forty or· two-fifty. I said, 'I'm going to make it two-fifty even.' * * *

"Q. Tell the Court why after having decided that Mr. Evans should get only the $250.00, what occurred, if anything, that caused you to finally agree to give more than that? A. * * * Mr. Floyd, he said, 'Wait a minute. I want to explain something to you fellows.' He figured out —let's see—state compensation, I believe he called it, which entitles the insurance of the State of Texas entitles a man to $25.00

for four hundred weeks, which would be eight or ten years, which would make it $10,000.00. He said, 'I'm in favor of giving $10,000.00 and his medics.' And a lot of them didn't know about this state law, the compensation law, and they asked, 'Well, how about explaining that to us?' So he explained it to us, and that's what we agreed to. * * * A. Well, he seemed to be knowing what he was talking about. He said he had handled cases. * * * A. * * * He said he was an experienced bus driver and he knew the laws.

"Q. I will ask you whether or not you personally believed that he did know what he was talking about? A. Yes. I did." Jackson said that his mind had been made up to give only $250.00, and that if Floyd had not explained the Workmen's Compensation insurance he would not have agreed to any more. He did· not remember that the foreman told the jurors that they were not to consider what Floyd had said.

The jury foreman, Tippen, testified that Workmen's Compensation was discussed, and that he told the jurors that "we are not to pay any attention to what a man is supposed to get." Asked if that "put an end" to the discussion on Workmen's Compensation, he answered: "I don't recall. I don't remember of anything coming up about workman's compensation. It could have been mentioned from time to time but I don't remember anything else, * * *."

■ The presumption that the trial court impliedly found that the alleged misconduct did not occur cannot be indulged since the evidence shows without dispute that it did occur. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Phillips v. Texas & Pacific Ry. Co., Tex.Civ.App., 223 S.W.2d 258; Travelers Insurance Company v. Carter, Tex.Civ.App., 298 S.W.2d 231.

Rule 327, Texas Rules of Civil Procedure, provides that upon a hearing of the motion for new trial the judgment should

be set aside if material misconduct is shown and it reasonably appears from the evidence both on the hearing and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

We think the holding in White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200, 202, is decisive of the question presented here. There it was said:

"We do not know that the five jurors who had voted for $15,000 were in fact induced by the discussion of attorney's fees to agree to a verdict of $16,000, for we cannot know what their mental processes were. But we believe that the reasonable conclusion from the testimony of the jurors and from the entire record is that they were probably induced by that discussion to agree to the answer that was made. The five jurors voted on the first ballot for $15,000. After that the misconduct occurred. It was material and of such nature that it was calculated to induce agreement to a greater amount. After the misconduct occurred the greater amount, $16,000, was agreed to by all of the jurors.

"We are not unmindful of the severity of respondent's injuries. It is doubtless true that the verdict is not excessive. Petitioners made no complaint in the Court of Civil Appeals of excessiveness in the verdict. But even though we may believe from the evidence in the record as to respondent's injuries that the verdict for $16,000 is not excessive, or that a verdict for a greater amount would not be excessive, we would not be justified in holding by reason of that conclusion that no probable injury resulted to petitioners from the misconduct of the jury. * * * It is our duty to apply to the record in this case the test prescribed by Rule 327. After careful examination of the entire record, our opinion is that the misconduct, the discussion of attorney's fees, was material misconduct, and that it reasonably appears from the evidence, both on the hearing of the motion and the trial of the case, and from the record as a whole, that injury probably resulted to petitioners from that misconduct."

The judgment is reversed and the cause remanded.