**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**A. B. KENNEDY, Appellee.**

No. 194.

Court of Civil Appeals of Texas.

Tyler.

May 26, 1966.

Rehearing Denied June 16, 1966.

John B. McDonald, Palestine, D. L. Case and Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

George L. Schmidt, Schmidt & Garrett, Houston, for appellee.

SELLERS, Justice.

Appellee, a conductor on appellant's train, brought this suit against appellant under the Federal Employers' Liability Act, 45 U.S. C.A. § 51, for injuries he claims to have sustained when the caboose in which he was riding and the five cars ahead of it became separated from the rest of the train after which the rear of the caboose derailed. Upon a jury verdict the trial court awarded appellee judgment against appellant in the amount of $75,000.00. From this judgment the appellant railroad company has duly prosecuted this appeal. Appellant has assigned some fourteen points of error, all of which this court has concluded must be overruled except those complaining of jury misconduct which we are of the opinion must be sustained, and in view of another trial we forego a discussion of the other points which we have overruled.

Appellant's assignments Nos. 7, 8, 9 and 10 are as follows:

"POINT OF ERROR NO. SEVEN—
(Restated)

"The trial court prejudicially erred in refusing to grant Appellant a new trial on account of the misconduct of the jury, while assessing Appellee's damages, in discussing and taking into consideration the attorney's fees which Appellee would be required to pay.

"POINT OF ERROR NO. EIGHT—
(Restated)

"The trial court prejudicially erred in refusing to grant Appellant a new trial on account of the misconduct of the jury, while assessing Appellee's damages, in discussing and taking into consideration whether or not Appellee would receive any pension, compensation, payments from insurance, social security, retirement funds, and hospital benefits.

"POINT OF ERROR NO. NINE—
(Restated)

"The trial court prejudicially erred in refusing to grant Appellant a new trial on account of the misconduct of the jury, while assessing Appellee's damages, in discussing and taking into consideration whether or not Appellee would be permitted by Appellant to return to work for Appellant.

"POINT OF ERROR NO. TEN—
(Restated)

"The trial court prejudicially erred in refusing to grant Appellant a new trial on account of the cumulative effect of the misconduct of the jury, while assessing Appellee's damages, in discussing and taking into consideration attorney's fees, whether Appellee would receive any pension, compensation, payments from insurance, social security, retirement funds, and hospital benefits, and whether or not Appellee would be permitted by Appellant to return to work for Appellant."

Appellant's motion for new trial setting up jury misconduct has attached to it the affidavit of one of the jurors which in part states:

"My name is Ozella Smith and I live on Route 4, Palestine, Texas. I was one of the jurors chosen to try the case of A. B. Kennedy vs. Missouri Pacific Railroad Co. about the middle of February, 1965.

"The jury did not have too much trouble answering the issues in the charge until it got down to the part on how much to give the man. The jury got into a discussion on whether or not the Plaintiff could go back to work for the railroad after the case was tried and whether he would receive any kind of pension of payments from any kind of insurance or any kind of railroad retirement or hospital benefits. Most all the jurors said that the Plaintiff, Mr. Kennedy, would be through as far as the railroad was concerned and that he could not work for them any more and would not get any kind of pension, compensation, insurance or hospital benefits of any kind. I told the jury that I knew a man in Palestine, who lives near a woman that I work for named Mr. Coleman who had sued the railroad and had gotten a settlement from the railroad and then made them put him back to work. This was when the jury had Mr. Hughes, the foreman, write a note to the Judge asking him some questions about pensions, compensation, hospitalization and retirement funds.

"When the Judge gave us the answers that he did to the questions all of the jury except me agreed that the man was not going to get anything else from the railroad and could not go back to work for them.

"When the jury got to discussing how much to pay the man, a discussion was had on how much the attorney representing Mr. Kennedy would get for his fee. It was generally decided that the attorney would get $\frac{1}{3}$ of whatever Mr. Kennedy got. The amount of attorney's fees was taken into consideration by the jury in deciding what amount to pay Mr. Kennedy. It was agreed by the jury that it wanted Mr. Kennedy to have $50,000.00 since he couldn't go back to work and wasn't going to get any pension or retirement and that his attorney's fee should be added on to it. The jury figured that the lawyer would pay the medical bills of Mr. Kennedy. Mr.

Hughes, the foreman, set down on paper the amounts that the jury thought Mr. Kennedy ought to get and the amount that the attorney would get and the amount that the doctors would get. That is the way that the jury came up with the $75,000.00 damages for Mr. Kennedy."

This juror was called as a witness on the hearing of the motion for new trial and testified at length about the jury misconduct and without objection stated that everything she had said in the affidavit was true and it is for this reason that we set out the affidavit above rather than quote at length from her testimony.

Only one of the jurors testified at the hearing on misconduct and he does not dispute that the misconduct stated by the other juror was true but says that after the jury sent out a note to the Judge and received the court's answer, they then answered the amount of damages.

During the deliberations of the jury, they made the following request of the trial court:

"1. After this suit is settled, will the Plaintiff receive any Pension or Compensation or Payments from any Insurance, Social Security or Retirement funds, Hospital Benefits of any kind?

"2. If so, how much.

"/s/ W. C. Hughes, Foreman."

Appellant moved for a mistrial, but the trial court overruled the motion and answered the jury's note as follows:

"Ladies and Gentlemen of the Jury:

"In response to your request, you are advised that you are not to consider the matters inquired about in your deliberations, but only the evidence admitted in the trial of this case and the Main Charge of the Court heretofore given you.

"/s/ R. W. Lawrence

"Judge Presiding."

After the hearing on the motion, the court made findings of fact and conclusions of law as follows:

"FINDINGS OF FACT

"The Court finds as facts: that during the jury's deliberation of its verdict in this cause

"I.

"The jury discussed the amount of attorney's fees which Plaintiff would be required to pay out of any verdict returned by the jury.

"II.

"The jury discussed whether or not Plaintiff would be permitted by the Defendant, Missouri Pacific Railroad Co. to return to work for such company after the trial of his cause of action and discussed the experience of another employee of such company who had filed suit against the Missouri Pacific Railroad Co.

"III.

"The jury discussed whether or not Plaintiff would receive any pension, compensation, payments from insurance, social security, *retirement* funds or hospital benefits.

"IV.

"During the jury's deliberations, the jury, through its foreman, addressed the following note to the Court:

"'1. After this suit is settled, will the Plaintiff receive any Pension or Compensation or Payments from any Insurance, Social Security or Retirement funds, Hospital Benefits of any kind?

"'2. If so, how much?

"'Signed W. C. Hughes, Foreman.', whereupon the Court gave the jury the following instructions:

"'In response to your request, you are advised that you are not to consider the matters inquired about in your deliberations, but only the evidence admitted in the trial of this case and the Main Charge of the Court heretofore given you.'

"'Signed R. W. Lawrence

"'Judge Presiding.'

"The discussion by the jury of the matter contained in Findings of Fact Nos. I, II and III occurred before the quoted instruction by the Court to the jury and there were no discussions by the jury of the matters contained in Findings of Fact Nos. I, II and III after such instruction was given by the Court to the Jury.

### "CONCLUSION OF LAW

"The Court concludes as a matter of law that Defendant has failed to establish probable harm as required by Rule 434 T.R.C.P. from the discussions heretofore found by the Court to having been had by the jury during its deliberations."

◼ This case is certainly not controlled by the recent case of Brawley v. Bowen et al., Tex., 387 S.W.2d 383, where the court held that the evidence of jury misconduct was conflicting, the trial court held that the misconduct did not occur, and the Supreme Court held this finding of the trial court was binding upon the appellate courts. Here we have the very opposite—the trial court held the misconduct did occur and then concluded that the same was not injurious to the appellant. The rule seems to be that when the misconduct occurs, as here, it is then a question of law as to whether the conduct was harmful. Trousdale v. Texas & N. O. R. Co., Tex.Civ.App., 264 S.W.2d 489, affirmed, 154 Tex. 231, 276 S.W.2d 242. This court has held in the case of Texas Employers' Insurance Association v. Waldon, Tex.Civ.App., 392 S.W.2d 509, opinion by Chief Justice Dunagan, as follows:

"When misconduct is established whether or not such misconduct be material and whether probable injury has resulted to the complaining party is one of law for the reviewing court."

◼ Neither is this a case controlled by the well-considered opinion of the Commission of Appeals in Bradley v. Texas & P. Ry. Co., 1 S.W.2d 861, where a mere mention of attorney's fees is made by a juror and promptly rebuked, but here a full discussion was had and the amount reduced to writing and the damages as finally assessed was in keeping with what the jurors placed on the slip of paper—$50,000.00 for the appellee and the rest for the attorney's fees and doctor bills, making the $75,000.00 as assessed by the jury.

The Supreme Court has stated in the case of White Cabs et al. v. Moore, 146 Tex. 101, 203 S.W.2d 200:

"A jury's discussion, when considering the amount of the damages to be awarded the plaintiff, of the attorney's fees that the plaintiff may be required to pay out of what he recovers is material misconduct and is calculated to prejudice the rights of the defendant."

In the recent case of Rodman Supply Co. et al. v. Jones, Tex.Civ.App., 370 S.W.2d 951, the misconduct was stated by the court as follows:

"* * * Upon the hearing of appellants' motion for new trial eight jurors testified. Several of the jurors testified attorneys' fees were mentioned and discussed to some extent. Juror Rivers testified attorneys' fees 'was discussed and deliberated', but it 'wasn't settled, because they didn't know how much anybody was going to get'. All but two of the jurors who testified stated attorneys' fees were mentioned, and one testified we 'naturally' assumed attorneys' fees would be paid. * * *"

The judgment was reversed holding the misconduct probably caused injury to the appellant.

What we have said relates only to attorney's fees as jury misconduct and we have not given any consideration to the other misconduct; however, it certainly had its combined harmul effect upon the jury.

The judgment of the trial court is reversed and the cause remanded.