**Albert Jessie MINOR, Appellant,**

v.

**Samuel GROSS et al., Appellees.**

**No. 599.**

Court of Civil Appeals of Texas, Tyler.

March 9, 1972.

Rehearing Denied April 6, 1972.

Kenley, Boyland, Hawthorn & Starr, Blake C. Erskine, Longview, for appellant.

Sharp, Ward & Ross, Earl Sharp, Longview, J. E. Jackson, Carthage, for appellees.

MOORE, Justice.

Plaintiffs, Samuel Gross and H. T. Long, temporary administrator of the estate of Tommie Jeter, deceased, brought suit against defendant, Albert Jessie Minor, for damages for personal injuries alleged to have been sustained as a result of an automobile collision. It was alleged that on or about the 19th day of July, 1968, Plaintiff, Samuel Gross, accompanied by

his guest, Tommie Jeter, was traveling in a northwesterly direction along Highway 149 in Longview, Texas, in the right-hand lane of traffic next to the curb; that defendant, Minor, was likewise traveling in a northwesterly direction occupying the inside lane of traffic, slightly ahead of plaintiff, Gross. Plaintiffs alleged that defendant suddenly drove his 1950 GMC Pickup truck into the right-hand lane of traffic occupied by plaintiffs, colliding with the automobile driven by plaintiff, Samuel Gross, causing personal injuries to plaintiffs. Defendant Minor answered with a general denial.

Trial was before a jury. In response to Special Issues Nos. 6, 6a and 6b, the jury found immediately prior to the collision that defendant Minor failed to turn his vehicle to the left to avoid the collision and that such failure constituted negligence proximately causing the collision. The trial court entered judgment on the verdict awarding plaintiff, Samuel Gross, the sum of $9,178.00 and the sum of $2,798.00 to the administrator of the estate of Tommie Jeter who died of causes not related to the collision prior to trial. Motion for new trial was timely filed and overruled and defendant, Albert Jessie Minor, duly perfected this appeal.

We affirm the judgment of the court below.

By his first two points appellant urges that the trial court committed reversible error in refusing to submit his specially requested issues inquiring of the jury whether either of appellees sustained personal injury as a result of the collision.

Appellant properly prepared and requested the submission of special issues inquiring whether appellees suffered an injury and objected to the charge of the court because of failure to submit the issues.

It is well settled that the plaintiff has the burden of proving injury. Texas & Pacific Railway Company v. Van Zandt, 317 S.W.2d 528 (Tex.Sup., 1958). It is likewise well settled that if plaintiff's own testimony as to injury is corroborated and undisputed, the trial court may assume that it was an established fact as a matter of law. Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., Inc., 96 S.W.2d 788 (Tex.Civ.App., Waco, 1936); Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (Tex.Sup., 1942); Loughry v. Hodges, 215 S.W.2d 669 (Tex.Civ.App., Fort Worth, 1948, writ ref., n.r.e.); Texas & Pacific Railway Company v. Moore, 329 S.W.2d 293 (Tex. Civ.App., El Paso, 1959, writ ref., n.r.e.).

Appellee Gross testified that immediately before the accident appellant pulled into his lane of traffic striking his automobile on the left-hand side near the front, causing his automobile to swerve to the right and strike the curb on the right side of the street with great force. He testified that as a result of the initial impact he was thrown against the left door of his automobile and when the car struck the curb, his chest was thrown against the steering wheel. After he got out of the automobile, he testified he was shook up and dazed and although he received some bruises, he told appellant and the investigating officer that he was not hurt. According to Gross's testimony, Jeter was also thrown against the interior of the automobile and that Jeter told him he was hurt and complained of pain in his stomach and back. The accident did not disable Gross's automobile and that after the accident he and Jeter proceeded on to their work on a pipeline. Gross testified that it was not until after he commenced work that he began to suffer pain in his neck and back. He also testified that Jeter complained of pain in his back but that they continued to work all that day as well as the following day when the job was completed. On July 22, 1968, he testified that at Jeter's request, he took Jeter to Dr. V. M. Holland's office in Carthage, Texas, and on July 26, 1968, he too went to Dr. Holland for treatment of pains in his back and neck.

Dr. Holland testified that he treated Jeter until he died with carcinoma of the pancreas in January, 1969. He testified that upon his original examination he found Jeter suffering with tenderness over the lower thoracic spine as well as strained ligaments in that area. He further testified that in his opinion this condition was brought about by the accident in question. He testified that although he was of the opinion that Jeter had recovered from his injuries by October, 1968, he continued to see him until he died of cancer, which was wholly unrelated to the injury.

Dr. Holland testified that upon his examination of appellee Gross, he found a moderate amount of muscle spasm of the cervical spine as well as a mild tenderness over the spinous process of his cervical spine; that he had tenderness over the fourth and fifth lumbar vertebrae with a mild amount of muscle spasm and that there was evidence of mild osteo-arthritis of his cervical spine. The doctor testified that based upon the complaints, as well as the objective findings, he was of the opinion that Gross's condition was probably caused by the accident of July 19, 1968. He further testified that he was of the opinion that Gross had recovered from his injuries by October, 1968.

Gross testified that at all times since the accident he suffered pain in his neck and back. At the request of his attorney he went to see Dr. Cave in Longview, Texas. Dr. Cave testified that upon examination on February 5, 1971, he found a 50% limitation in the flexion of the neck, and that the movement in Gross's low back was roughly 50% of what he would consider normal in a man of his age. He also testified that Gross complained of pain in the back and neck. X-rays, he testified, revealed a spurring on the 5th cervical vertebrae, as well as arthritis. X-rays also revealed a compression fracture of the 4th lumbar vertebrae. Based upon his examination and treatment, he expressed the opinion that the accident in all reasonable probability caused the injuries and probably aggravated the existing arthritic condition.

Although Gross admitted that he had occasionally performed labor after the accident and admitted that he was employed as a janitor at the time of trial, he testified he suffered pain continuously and worked only because of economic necessity. Appellant offered no evidence to rebut appellees' proof of injury.

■■ The testimony offered by appellees, in our opinion, contains at least some evidence of probative force showing appellees sustained some injury as a result of the collision. While the burden of proof upon the issue of injury never shifts, the burden of going forward with the evidence may shift and be cast upon the opposite party when the proponent's evidence is sufficient to entitle him to a ruling that the opponent shall lose if he fails to come forward with evidence. The rule relating to the shifting of the burden of producing evidence is well stated in McCormick & Ray, Texas Law of Evidence, Second Edition, sec. 47. Texas & Pacific Railway Company v. Moore, supra. Since appellant offered no evidence to rebut the testimony showing injury, we think the trial court was justified in concluding that the fact of injury was established as a matter of law. Appellant's points one and two are therefore overruled.

By his third point appellant urges that the judgment should be reversed because of jury misconduct. In this connection he contends that the record shows the jury took into consideration attorney's fees in awarding the damages.

Seven jurors testified on the motion for new trial. One of the jurors, Mrs. Walston, testified the attorney's fees were discussed in connection with the amount of damages and some of the jurors discussed the amount that appellees would have to pay their attorneys. There is a conflict between the testimony of the jurors as to what was said about attorney's fees. Two

of the jurors did not even remember attorney's fees being mentioned. Four jurors testified that although attorney's fees were mentioned, there was no extended discussion thereof. They testified that the jury foreman admonished the jury not to consider attorney's fees and that no one on the jury disagreed with the foreman's instructions. Some of the testimony indicates attorney's fees were mentioned by only one of the jurors and possibly a second. Other testimony indicated the mention of attorney's fees took place at the very beginning of the jury deliberations and was not focused on a discussion of the damage issues. The record shows that the juror Walston did not want to award appellees any damages except for medical bills, while other jurors argued for damages in amounts ranging from $10,000 to $15,000. The amount finally awarded was arrived at by a compromise. With the exception of the testimony of Mrs. Walston, there is nothing in the record to suggest that after attorney's fees were mentioned the jury agreed to raise the amount of damages. While Mrs. Walston admitted she agreed to the compromise figure, her testimony definitely shows that it was not because of attorney's fees. According to her, she agreed to the verdict only because all other jurors agreed upon a compromise and she reluctantly went along.

■ The question of whether misconduct occurred in the jury room is a question of fact; but the question of whether or not misconduct resulted in injury to the complaining party or affected the verdict of the jury is a question of law to be determined by the court. The trial court heard the testimony and observed the demeanor of the witnesses while testifying and concluded either that no misconduct was shown or that no injury to appellant had been shown. There are no findings of fact showing the grounds upon which the trial court overruled the motion for new trial. Conceding the fact that attorney's fees may have been mentioned, it does not necessarily follow that injury resulted or

that the verdict was influenced by it. It seems to be the well-settled rule that the mere fact that misconduct occurred in the jury room does not call for a new trial nor for a reversal of the case by the appellate court unless injury resulted. Rule 327, Texas Rules of Civil Procedure, expressly provides that a new trial may be granted if the misconduct was material and it reasonably appears from the evidence that injury probably resulted to the complaining party. To warrant the granting of a new trial or to constitute reversible error in the appellate court, it must appear reasonably probable that the verdict was affected by the misconduct of the jury. Menefee v. Gulf, C. & S. F. Ry. Co., 181 S.W.2d 287 (Tex. Civ.App., Amarillo, 1944, ref., w.m.); White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200 (Tex.Sup., 1947); McGee v. McGee, 237 S.W.2d 778 (Tex.Civ.App., Amarillo, 1950). Since there is nothing in the record to suggest that the jury probably awarded a greater amount of damages solely to allow for the payment of attorney's fees, we cannot say that the verdict was affected by the misconduct, if any. Under the record as a whole, we are not convinced that the misconduct, if any, resulted in harm to appellant.

■ By the fourth point appellant urges that the court erred in overruling his hearsay objection to testimony of Eldon Thane, a Texas Highway Patrolman, upon the contents of a chart showing the stopping distances of automobiles under certain circumstances. The record shows that the patrolman was qualified as an expert. During the course of his testimony, counsel for appellees, at one point, asked him to testify as to the stopping distance as shown by the chart. Upon the objection that the question called for hearsay, counsel reframed the question and propounded a hypothetical question based on the alleged facts and asked the patrolman to state the stopping distance based upon his training and experience and materials furnished him in the various schools he had attended. Counsel again objected on the ground of

hearsay. The objection was overruled and the witness was permitted to express an opinion. We fail to see how this testimony would be subject to the hearsay rule. While it was shown that his testimony coincided with the distance shown by a certain chart he had in his possession, it does not necessarily follow that his testimony amounted to hearsay. Presumably his response was based on his experience, education and training. There is nothing to show it was based solely on the chart. But even so, the error, if any, would appear to be irrelevant and immaterial because stopping distance was not a material issue. The record shows that all issues involving stopping, or stopping distance were answered in favor of appellant. Therefore, the error, if any, could not have resulted in harm to appellant. Rule 434, Texas Rules of Civil Procedure.

Points five through ten rests upon the proposition that there is no evidence to support the jury's finding to Special Issues Nos. 6, 6a, and 6b; alternatively appellant asserts that the finding and judgment are contrary to the overwhelming weight and preponderance of the evidence. The jury, in response to these issues, found that appellant failed to turn to his left in order to avoid the collision and that such was negligence proximately causing the collision. Appellant testified that immediately prior to the collision a pickup truck traveling in front of him suddenly stopped before making a left turn off Highway 149. He testified that when he pulled to his right to miss the pickup, he collided with the Gross vehicle. He said that if he had pulled to his left he would have been turning in the same direction of the pickup and would have in all probability struck the truck. He further said that if he had pulled to his left he would have had to cross the double yellow stripe dividing the highway thereby exposing himself to oncoming traffic in violation of the law.

 The record shows that at the point where the pickup was alleged to have suddenly stopped was at an intersection where traffic was permitted to turn on to Interstate Highway 20. The evidence further shows that intersection was designed so as to allow traffic to turn left at that point and go across Highway 149. Appellant admits that there was no vehicle coming toward him that would have prevented him from turning to his left. The undisputed testimony shows that the intersection was designed to allow traffic to proceed across Highway 149 to the left at that point and therefore we fail to see how a left turn would have constituted a violation of law. Appellant testified that he could have turned to his left. In view of his own testimony, as well as other physical facts, we cannot agree with the proposition that the evidence was legally insufficient or incompetent to support the jury's findings to Special Issues Nos. 6, 6a and 6b. Nor can we agree with appellant's proposition that the evidence as a whole is so overwhelming against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Points five through ten are overruled.

The judgment of the trial court is affirmed.