**McALLEN COCA COLA BOTTLING COMPANY, INC., Appellant,**

v.

**Maria Natividad ALVAREZ, Appellee.**

**No. 1402.**

Court of Civil Appeals of Texas, Corpus Christi.

April 12, 1979.

On Remittitur April 26, 1979.

Mike Mills, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellant.

James S. Bates, Bates & Hendrix, Edinburg, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for damages brought by Maria Alvarez against the McAllen Coca Cola Bottling Company, allegedly as a result of the plaintiff drinking a portion of the contents of a Coca Cola bottle in which there was wedged a hairpin. The case was tried to a jury, and based on the verdict, the trial court entered judgment for the plaintiff for pain and mental anguish in the sum of $30,000.00 and for medical expenses in the amount of $12.00. Defendant McAllen Coca Cola Bottling Company has perfected its appeal to this Court.

The evidence showed that the plaintiff was a teacher's aide, and while she was at the Zavala Elementary School in McAllen, Texas, eating her lunch, she drank a Coca Cola which contained the hairpin wedged in the bottle. Plaintiff became immediately ill and regurgitated, but thereafter remained at work during the rest of the day. That night she became violently ill and had to be taken to the emergency room of the McAllen General Hospital where she was treated by a physician. She was released from the hospital the same night. She lost the next two days of work, complaining of diarrhea, nausea, cramps and headaches. Other witnesses testified that plaintiff Alvarez had a violent reaction every time the word "Coke" was mentioned. Mrs. Alvarez testified that the family cannot have Coca Cola in the house because of the violent effect that it has on her every time the word "Coke" is mentioned. She testified finally that she still receives a reaction, four years after the incident, every time there is a mention of the word "Coke" to her.

The appellant complains primarily of the excessiveness of the jury's award. Its first point of error, however, is directed toward jury misconduct. The trial judge, on the filing of the amended motion for new trial duly supported by affidavits of several jurors, conducted a hearing on the question of jury misconduct. Four of the twelve jurors testified at the motion for new trial hearing.

The first juror, Jesse Carrillo, Jr., testified that the amount of attorneys fees which plaintiff would be charged by her attorney was discussed in the jury room before the entire jury. Juror Carrillo testified that there was a discussion to the effect that 33% or 45% of any award made to the plaintiff would go to her attorney. Carrillo also testified that one of the jurors, who was an orderly or a nurse at a hospital related to the jurors that it could not have

been the lunch (potted meat) that plaintiff had eaten during her lunch that caused her illness, because it takes four hours to digest food. Carrillo also stated that there was a discussion as to the size of the defendant corporation. He stated that one juror said: ". . . since it was such a big corporation $30,000.00 or $60,000.00 wouldn't affect them at all." Carrillo was the one juror who did not sign the verdict.

Juror Felipe Cortez also testified that attorney fees were discussed but he could not remember the percentage or fractions mentioned. He testified that the discussion of attorney fees was not made before the entire jury, but just before a few jurors, "between a couple of us."

Juror Omar Garcia testified that attorney fees were discussed by the jurors to the effect that, "We just discussed the amount that it was too much money split in half . . .", and, question: ". . . that was discussed in front of the entire jury?" Answer: "Right."

Juror Roel Garza testified that plaintiff's attorney would receive around $15,000.00 or $20,000.00 and that this was discussed in front of the entire jury.

The effect of jury misconduct must be determined in light of Rule 327, T.R.C.P. This rule directs the trial court to inquire as to whether or not, as a matter of fact, jury misconduct occurred. If misconduct is proved from the record as a whole, it then must be determined before a reversal is justified, if such misconduct was material and that probable injury resulted to the complaining party. *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex.Sup.1969). It has long been the rule of law that jurors must not be permitted to become secret witnesses in the jury room by testifying and attempting to influence their peers with evidence that did not come from the mouths of sworn witnesses during the course of the trial. *Central Power & Light Company v. Freeman,* 431 S.W.2d 897 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.). A discussion of attorney fees and the amount that a plaintiff might be required to pay out of what he recovers is material misconduct,

and such, if proved, is calculated to prejudice the rights of a defendant. *White Cabs, et al. v. Moore,* 146 Tex. 101, 203 S.W.2d 200 (1947).

To grant or deny a new trial on the basis of misconduct of a juror is to a large extent within the sound discretion of the trial court. Its decision will not be disturbed unless it is erroneous. The question of whether or not misconduct occurred is one of fact to be determined by the trial court from the evidence at the motion for new trial as any other question of fact is to be determined. This rule will ordinarily be accepted as final when supported by the evidence or when the evidence thereon is conflicting. Where the trial judge overrules the motion for new trial on the ground of jury misconduct and does not make findings of fact, it will be presumed on appeal that the court made findings that were necessary to support its order.

The point in time during jury deliberations at which misconduct occurs is an important factor in determining the probability of injury. *Mrs. Baird's Bread Co. v. Hearn,* 157 Tex. 159, 300 S.W.2d 646 (1957); *City of Houston v. Quinones,* 142 Tex. 282, 177 S.W.2d 259 (1944). If such discussions were made after the amount of the damages had been determined by the jury, misconduct would be held to have been harmless. Although misconduct may have occurred during jury deliberation, Rule 327 expressly fixes the burden upon one complaining of misconduct to prove that "it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted." *Ross v. Texas Employers' Ins. Ass'n,* 153 Tex. 276, 267 S.W.2d 541 (1954). There was a conflict between the jurors' statements as to whether or not the attorney fees were discussed before the entire jury or "between a couple of us." In view of the trial court's implied finding upon conflicting evidence and the lack of proof as to the point in time during jury deliberation at which the misconduct occurred, we cannot say that the trial

court's decision is palpably erroneous. See and compare *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.Sup.1969).

The next major contention of the appellant McAllen Coca Cola Bottling Company is that the jury's finding of $30,000.00 for pain and mental anguish is excessive. The trial court overruled the defendant's motion for new trial in which it asserted the verdict was manifestly excessive. The defendant says this was error. The defendant contends that such an award for several days of nausea, cramps and diarrhea followed by the inability to drink Coca Cola and an aversion to the mention of Coca Cola is grossly unfair. The defendant says the evidence shows that: the plaintiff returned to work on Monday following the Wednesday incident; she did not recall whether or not she had lost pay for the two days of work that she missed; there was no evidence on loss of pay; the plaintiff's immediate supervisor testified that she did not notice any adverse effect on Mrs. Alvarez's work; the plaintiff admitted that although she does not drink Coca Cola or eat potted meat, she does drink such soft drinks as Fresca, Fanta and strawberry; she admitted on cross-examination that she has seen no doctor for the effects from drinking from the bottle in question since the week of the occurrence; and the plaintiff's total doctor bill equalled $12.00.

There is no certain standard by which personal injury damages can be measured. Each case must stand on its own facts and circumstances and a comparison with other cases on amounts of verdicts found therein is of little or no help. Mental anguish is, however, a proper element for the awarding of damages in a personal injury suit. Anguish has been defined to be "intense pain of body or mind" and as "a high degree of mental suffering." 17 Tex. Jur.2d, Damages, § 126, p. 192. It must be something more than worry and vexation, however. Plaintiff's pain was limited to the first several days and the mental pain thereafter to when Coca Cola was mentioned.

In determining whether a verdict is excessive, all the elements of damages that the jury could have properly considered from the evidence must be examined. In passing on whether the verdict is excessive, we consider only the evidence in support of the award and view such evidence in the light most favorable to the jury's award. We are aware of the cost of living and the purchase power of the dollar when making the determination of whether or not the amount of the verdict is excessive. The purpose of an award of damages is to provide just compensation for the injury determined. Reviewing the entire record in light of these rules, we find that the jury's award of $30,000.00 was reached as a result of passion, prejudice or some other improper motive that made it so excessive as to shock the sense of justice and the conscience of this Court. It is for this reason and this reason only that we find that the case must be reversed and set aside unless a remittitur is filed for the excess amount. The appellant McAllen Coca Cola Bottling Company suggests that a $15,-000.00 remittitur would be proper. We agree.

We, therefore, hold that the amount of the jury's award is excessive by the amount of $15,000.00. We hereby grant the plaintiff ten days from the date of this opinion to remit to this Court the sum of $15,000.00; otherwise the cause will be reversed and remanded for a new trial.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellee remit the sum of $15,000.00 as set forth in the original opinion. The appellee, through her attorney, has filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the appellee so that the amount of judgment against the appellant is reduced to the sum of $15,012.00.

The judgment of the trial court as herein reformed is hereby affirmed. Costs will be assessed 50% to each party.