**Charles R. BAILEY et al., Appellants,**

v.

**W. R. RAINS et al., Appellees.**

**No. 5141.**

Court of Civil Appeals of Texas, Waco.

Oct. 5, 1972.

Rehearing Denied Oct. 26, 1972.

838

William E. Hornbuckle, III, William R. Malone, Huntsville, for appellants.

Mac L. Bennett, Jr., Normangee, W. T. Bennett and Kenneth H. Keeling, Huntsville, for appellees.

HALL, Justice.

The appellants, Charles Bailey and two of his four children, are the contestants of the will of Mrs. Willis Ellen Musgrove Bailey Rains. Bailey was testatrix' only child.

The appellees are the proponents of the will. They are W. R. Rains, surviving husband of the testatrix, and R. M. Henderson, an old friend of the testatrix. Rains, Henderson and Bailey were named as joint executors in the questioned will. The will is dated October 1, 1969. Testatrix died on March 31, 1970.

Contestants attacked the will in the County Court, and in the subsequent appeal to the District Court, on the grounds (1) that testatrix lacked testamentary capacity and (2) that the will is the product of undue influence exerted on testatrix by Rains. Trial to the County Court without a jury resulted in findings that the testatrix did possess testamentary capacity and that the will was not the result of undue influence. Identical findings were made by a jury on the trial in the District Court. Judgment was rendered on the verdict admitting the will to probate. We affirm.

Testatrix married W. R. Rains on March 21, 1942. She had previously been married to three others. The prior marriages ended in divorce in the years 1924, 1927 and 1932, respectively, after durations of less than two years. Contestant Bailey was born to testatrix during the first of her four marriages.

On June 17, 1942, testatrix executed a will in which the bulk of her estate was left to contestant Bailey.

On May 17, 1969, Mrs. Charles Prince, who was the sister of testatrix, died. Her death was especially distressing to the testatrix for several reasons: Mrs. Prince was the sole survivor of testatrix' brothers and sisters; they "loved each other dearly" and were confidants; and testatrix believed that Mr. Prince in some fashion caused or contributed to the cause of the death of her sister.

Bailey suffered a heart attack and was hospitalized on March 18, 1969. Between that date and the death of testatrix he was in and out of the hospital approximately nine times. These included trips to the hospital on the 3rd and 22nd of September, 1969, for open-heart surgery and for the placement of a plastic vein in one arm. He has been unable to hold a job since the heart attack.

Testatrix had a history of cerebral-vascular disease. On May 23, 1969, she suffered a stroke and was hospitalized. While in the hospital, she had her attorney prepare a new will. The will was executed by her on May 28th. She was released from the hospital the next day. Shortly before October 1, 1969, she again contacted her attorney and had him draft wills for execution by her and her husband. On October 1st, the wills, which include the will in question, were executed by testatrix and Rains. There was only minor change, involving disposition of five cemetery lots, between testatrix' wills of May 28th and October 1st. In effect, both wills divided the separate property owned by testatrix between her son and her husband, and gave the remainder of her estate to her husband. Bailey's children are named as contingent remaindermen in the event Rains should have predeceased testatrix. Compared with her community property, testatrix' separate property was relatively small.

On March 31, 1970, testatrix, then 63 years of age, died in the hospital as the result of a stroke suffered four days earlier.

The trial court instructed the jury that a person, to have testamentary capacity at the time of execution of a will, "must have had sufficient mental ability to understand the business in which she was engaged, the effect of her act in making the will, and the nature and extent of her property; she must be able to know her next of kin and the natural objects of her bounty, and their claims upon her; she must have memory sufficient to collect in her mind the elements of the business about to be transacted and to hold them long enough to perceive at least their obvious relation to each other, and to be able to form a reasonable judgment as to them; and finally, to have testamentary capacity, a person must not, at the time of execution of the will, have been laboring under any insane delusion either in regard to her property or the natural and proper objects of her bounty, which affected the disposition of the property she was attempting to make, or of which delusion the papers were the offspring or fruit. By 'insane delusion' is meant the belief of a state of supposed facts which no rational person would believe."

If the testimony favorable to proponents is true, then testatrix was of sound mind, and possessed every element of "testamentary capacity" as set forth in the trial court's definition of that term, on October 1, 1969, and during the years of her life before that date and the months thereafter until her fatal stroke. Close friends, and others who knew testatrix on a social, fraternal, and business basis, including her personal physician and her attorney, attested directly to that fact. They testified further that she was "very sharp and efficient" and "mentally alert and smart"; that "her mind was just as sharp as a tack" and "she knew what she was doing"; that she was a "neat, petit woman," "im-

maculate" in the maintenance of her home and person; "a very intelligent woman"; a "determined sort of person" of "strong convictions"; "a person of strong will and determination"; "hard-working and frugal"; "very friendly"; "diligent"; "efficient"; a "good woman" with "a reputation in the community for truthfulness"; that before and after October 1, 1969, as well as before, during, and after her stay in the hospital in May, 1969, there was no change in her disposition or personality or conduct. They said that she and Mr. Rains were a "devoted couple"; that she was "the more outgoing of the two in conversation and demeanor"; that she knew more about the details of their business and legal affairs than did Mr. Rains, "was the business manager of the family," "took the lead in attending to their business" and "was the spokesman for the two." In fact, she told the attorney who drafted their wills of October 1, 1969, what to put in Mr. Rains' will, and he knew nothing about it until he went with her to the attorney's office. She told him to sign it, and he did. She was "very fond" of her son, Charles, and "quite concerned, always," about him because of his ill health. She expressed "normal feelings of love" for her grandchildren, "just like everyone."

Testimony favorable to contestants pictured testatrix lacking one or more of the essential elements of testamentary capacity on October 1, 1969, because of physical illness and weakness, emotional distress and depression over the loss of her sister and her son's physical and financial problems, and the influence of drugs and other medications she had been or was taking "that affected her judgment and reasoning power." They gave further testimony that she was "agitated all the time"; "extremely worried" about Charles; "not totally rational"; "not entirely sound" mentally; "slipping mentally" between September and November, 1969; that "her thinking was clouded" and there was "some confusion" on her part as to the nature and extent of her property; that she did not trust her husband and "couldn't stand" him; that she believed her husband "was after her money" and was "draining her dry" of her money by spending it on cattle and their farm; that she believed the wills of October 1, 1969, were joint and mutual (when in fact they were not); and that she believed that the largest part of her estate went to her son under the will.

■ We have examined the entire record. We conclude that the jury's finding of testamentary capacity is not against the great weight and preponderance of the evidence. Contestant's assertion to the contrary is overruled.

■ Edward G. Clark was permitted to testify that in his opinion Mrs. Rains was of sound mind on October 1, 1969, over contestants' objection that his personal acquaintance with her was not sufficient to qualify him for this testimony. This is assigned as error by contestants. We sustain the court's ruling.

Mr. Clark is Administrator of the Madison County Hospital. He first met Mrs. Rains in March, 1969, when she was visiting in the hospital. He visited with her again when she was a patient in the hospital in May, 1969. In July of that year he visited with her when she applied for membership in the hospital's volunteer service group. She took a 90-day training program supervised by Clark and several others, and was admitted into the service group. Subsequently Clark was "in touch" with her when she was "in and out of the hospital in that capacity."

Under the record Clark was qualified to express an opinion as to testatrix' mental state. Contestants' objection went to the weight of the testimony rather than its admissibility. Hassell v. Croft (Tex. Civ.App., 1959, writ ref., n. r. e.) 324 S.W. 2d 272, 275. Mueller v. Banks (Tex.Civ. App., 1954, writ ref., n. r. e.) 273 S.W.2d 88, 89.

Proponents' counsel argued to the jury that during the course of the trial he tendered the will of Mr. Rains to contestants' attorneys for use in evidence if they so desired, and then asked the jury, "Did they offer it to you?" Contestants' objection to "any further reference about this Will" because "it hasn't been admitted into evidence" was sustained; but, in response to their request for an instruction to the jury to disregard the argument the court said, "Go ahead, I'm not going to make any comment about it."

On the trial, testimony was adduced before the jury by both proponents and contestants, without objection, about Mr. Rains' will. It showed that he left all of his property to Mrs. Rains if she survived him; that their wills were not joint and mutual; and that Mr. Rains was legally free to change his will at anytime. Then the following discussion was held between counsel and the court in the presence of the jury:

"MR. BENNETT (Counsel for proponents): 'Excuse me, Mr. Hornbuckle—while they are speaking of Mr. Rains' will, I'll tender it to Mr. Malone and Mr. Hornbuckle—with no objections, we would offer it in evidence.'

"MR. HORNBUCKLE (Counsel for contestants): 'Your Honor, we would object to it being offered in evidence.'

"* * *.

"MR. BENNETT: 'I tendered it to them if they want to offer it in evidence. I had it in my possession. * * * Let the record reflect its available to Mr. Malone and Mr. Hornbuckle.'

"THE COURT: 'It's available to both parties, as far as that's concerned—let the record reflect that.' "

█ We agree with contestants that the trial court should have supported his ruling prohibiting the argument with the re-quested instruction to the jury to disregard it. However, we also agree with proponents that the error complained of was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in the case. Under the provisions of Rule 434, Texas Rules of Civil Procedure, the error is therefore harmless, and contestants' point in which it is assigned is overruled.

█ Contestants base a complaint of alleged jury misconduct on statements assertedly made by jurors during their deliberations that were not founded upon evidence in the case. Contestants candidly admit in their brief that some of the statements were immaterial to the questions of testamentary capacity and undue influence, and the record supports this admission. The testimony of the jurors on the hearing of the motion for new trial as to whether or not the remainder of the statements complained about were made is conflicting. The fact question thus created was impliedly resolved by the trial court against contestants by the order overruling the motion for new trial. Monkey Grip Rubber Company v. Walton, 122 Tex. 185, 53 S.W.2d 770, 773 (1932).

█ To serve as the basis for the granting of a new trial, alleged jury misconduct must be established as a fact and must be material. Rule 327, Texas Rules of Civil Procedure. When the evidence offered thereon at the hearing on the motion for new trial is conflicting, the decision of the trial court on the fact question is binding on appeal. Brawley v. Bowen (Tex.Sup., 1965) 387 S.W.2d 383, 384.

Contestants' complaint of jury misconduct is overruled.

On voir dire examination, contestants' attorney asked juror Mrs. Ruby Faye Wooley, "Are you employed?" She answered, "Not now." No questions were asked Mrs. Wooley regarding her past or prospective employment. Contestants' now

contend that Mrs. Wooley's answer was an erroneous or incorrect one, and prejudicial. We disagree.

The record shows that Mrs. Wooley worked as a maid and baby-sitter for about three years, until September, 1971, for Dr. and Mrs. Mac L. Bennett III; that she has not worked for them since that time; that Dr. Bennett is a dentist in Madison County, Texas; that he is the nephew of W. T. Bennett, one of proponents' trial counsel in the District Court; that the case was tried in November, 1971, in the District Court of Madison County; and that Mrs. Wooley was unemployed at the time of trial.

Mrs. Wooley was not asked whether she knew W. T. Bennett, or any of his relatives, or whether she had ever been employed by any of them. She testified on the hearing of the motion for new trial that, had she been asked, she would have told of her past relationship to Dr. and Mrs. Bennett.

Contestants assert that Mrs. Wooley "owed a duty" to disclose her past employment with Dr. and Mrs. Bennett. We disagree. The only question propounded to Mrs. Wooley relating to her employment was answered truthfully. Inasmuch as no direct and specific questions were directed to her with reference to her relationship to attorney Bennett, or his relatives, then, absent a showing of a concealment of facts by the juror, there is no error. Coulson v. Clark (Tex.Civ.App., 1958, writ ref., n. r. e.), 319 S.W.2d 183, 192. One who fails to conduct a complete voir dire waives his right to complain of any alleged resulting prejudice. City of San Antonio v. Willinger (Tex.Civ.App., 1961, no writ hist.), 345 S.W.2d 577, 578.

Contestants have other points and contentions. All have been duly considered. In the light of the entire record, none reflect reversible error. They are overruled.

The judgment is affirmed.