**Sandra Norma TEES, Appellant,**

v.

**Harold James TEES, Appellee.**

**No. 16821.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 3, 1977.

Schlanger, Cook, Cohn & Mills, Steven J. Watkins, Houston, for appellant.

Tinsley & Snowden, Paul R. Tinsley, Houston, for appellee.

PEDEN, Justice.

Mrs. Sandra Tees appeals from the granting of a divorce decree appointing Sgt. Harold Tees, her former husband, as managing conservator of the parties' two children. She complains of jury misconduct and alleges that an agreement between her former attorneys and opposing counsel prevented her from presenting evidence that her husband used drugs. We affirm.

The custody issue was, by agreement, the only one submitted to the jury.

The appellant's first point of error is that the jurors were guilty of misconduct be-

cause during deliberations they discussed and were influenced in reaching their verdict by statements of juror Mrs. Ruby T. Traynham that she had been successful in raising her three children on an army base.

Harold Tees is a sergeant in the U. S. Army, currently stationed in San Antonio. He testified during the trial that he lives in government housing on the post and feels it is a suitable place for the children. If awarded custody he would keep them in the child care center at the post while he is at work. He feels that army life would be good for the children. No evidence was offered to contradict this testimony, and he was not cross-examined on this subject.

The appellant contends she has shown misconduct by the testimony of several jurors at the hearing on her motion for new trial. She asserts that juror Traynham "made statements to the effect that she was married to a man who had a career in the service, that her children had been raised in the service, that her children turned out all right, and that the service was a good place to raise children."

The Supreme Court stated in *Crawford v. Detering Co.*, 150 Tex. 140, 237 S.W.2d 615 (1951):

"Under Rule 327 of the Texas Rules of Practice and Procedure in Civil Actions, the plaintiff in this case was required to show, in order to obtain a new trial upon the ground of jury misconduct that (a) the misconduct complained of in fact occurred, (b) it was material, and (c) it was calculated to and probably did result in harm to him."

The appellant has the burden to prove material misconduct which, from the record as a whole, probably resulted in harm. *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969).

We review the testimony of the jurors who testified at the hearing on the motion for new trial. Mr. Charles Draughon testified that the jury first elected a foreman, then re-read the charge and took a quick vote. Seven jurors voted to award custody to the father, four to the mother, and one did not vote. Draughon voted to award custody to the mother. The jurors then discussed the evidence. "It was simply noted . . . that Sgt. Tees was in the army and was a single person and the question was whether he had the capabilities or the facilities to have the proper custody of the children . . . It was regarded as a secondary kind of fact. The primary thing was to decide which one would offer better custody of the children." In response to a question by another juror about her statement made on voir dire, juror Mrs. Traynham said she was married to a career service man, they had raised their family while in the service, and her children came out all right. She was not forceful. The jurors were interested in what Mrs. Traynham had to say but didn't dwell on the matter. Mr. Draughon said her statement did not affect his answer to the special issue. The jury took another vote shortly after Mrs. Traynham's remarks. He didn't recall whether it was the second or third vote, but the result of it was something like ten to two in favor of Sgt. Tees. She did not try to persuade anyone to change a vote. He didn't change his right after she made her statement; he changed it at the second vote after that.

Mr. Cecil P. White was the next juror to testify. A poll was taken after election of a foreman and re-reading of the charge, then the evidence was discussed. He said he tried not to let the fact that Sgt. Tees was in the army and living on an army base interfere in his decision and doesn't think it did. He recalled that Mrs. Traynham said she had raised her children on an army base and as far as she knew they turned out all right, but she did not elaborate. Her answer was not forceful or domineering. She was the wife of a retired army man, a fact established before the jury was selected. A second vote was taken after the discussion, and he voted to give the children to the father. He did not change his vote because of Mrs. Traynham's statement. No juror attempted to stop her from making it.

We review the testimony of Mrs. Ernest B. Wilson. After the first vote, everybody

started expressing opinions. One short gentleman said, "I think the children should be with their mother." The fact that the husband was in the army was discussed. A lady said she demanded equal time, and everybody laughed. She held her hand up and said she had raised her children in the military successfully, and she thought it was a good place for children. She called for attention when she made the statement, then lowered her voice and explained how she raised her children. The others seemed to be interested in what she was saying. Everyone was asking for opinions. Mrs. Traynham said it was a good, protective life. Mrs. Wilson testified she voted in favor of the woman on the first seven-to-four-to-one poll. On the second, taken after Mrs. Traynham's statement, there were only two votes for the woman. "The short gentleman who started the statement said because of what this woman said he would like to change his vote and it seems like everyone explained their vote." Mrs. Wilson said she changed her vote after the ten-to-two vote, even though she knew it wouldn't make any difference since the judge had instructed them that a ten to two would be sufficient. She "thought maybe the children would be better off on a base somewhere." She thinks she changed her vote because the husband was in the military. It was already ten to two and she knew it wouldn't make any difference, but she wanted it to go on the record as the way she felt.

Mrs. Ruby Traynham testified that she was in the Air Force for twenty-eight years and raised her children there. Her husband is now retired from the military. There was some discussion about Sgt. Tees' being in the army. The jury discussed the raising of children on army bases. She asked for equal time for the women because none of them had said anything. She did not discuss her experience in the military, but her answer was similar to that she gave in the courtroom. It was not a discussion of the military as a whole, but of the possibility of raising a family in a stable and Christian area which happened to be a military base.

She stated that it was possible and that she had reared her family without any problem. On voir dire the question of raising a family had come up and she had answered about how long she had been in the service; someone jokingly said that she was in and had turned out all right.

Mr. Jacob L. Schulzinger testified that during the jury deliberations a lady said she had reared three children in the military and they had come out well but others may not have had the same experience. Schulzinger's vote was for Mr. Tees throughout the deliberations.

Mr. James Collins testified that any statements made in the jury room concerning one of the ladies rearing her family on a military base did not influence him or cause him to change his vote in any way. His first vote was for Mrs. Tees. It was not a formal vote, and he had not yet made up his mind.

Mr. Robert Arrington testified that he remembered Mrs. Traynham saying she raised her family on a military base, but others did not make it too well there. He said he voted for Sgt. Tees throughout the proceeding.

■ A trial judge is not required to make findings of fact after a hearing on a motion for new trial. Absent findings of fact we presume in support of the order overruling the motion that the trial judge did not find that jury misconduct had occurred, did not find that it was material, or that it probably caused harm.

■ In consideration of a motion for new trial on grounds of misconduct of a jury, testimony should be confined to overt acts, and inquiry into mental process of jurors should be avoided. *Trousdale v. Texas & N. O. R. Co.*, 154 Tex. 231, 276 S.W.2d 242 (1955). We have reported the jurors' testimony about mental processes, but we do not consider it.

■ We cannot say the trial court erred in overruling the motion alleging jury misconduct. The evidence concerning Mrs.

Traynham's statements varies somewhat. Most agreed she said her husband was in the service while her children were raised and that they came out all right, basically the same thing she said during jury selection. Two jurors testified that she also said there were others that did not have the same experience and did not make it too well on military bases.

The trial judge was entitled to accept the latter version, to conclude that the public in general would probably reach the same conclusion based on its knowledge, that the jurors knew before beginning their deliberations that Mrs. Traynham was satisfied with the way her children had been raised on service bases, and that there was no misconduct.

■ The appellant has not shown the materiality of any misconduct. Rule 292, Texas Rules of Civil Procedure, states in part:

"A verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten members of an original jury of twelve . . ."

The verdict was signed by the jury foreman as unanimous. At most, the evidence does not compel a finding that more than two jurors changed their vote because of Mrs. Traynham's comments. We do not know the identity of the "short gentleman."

We have examined the entire record of this case, and we hold that the appellant did not discharge her burden of proving probable harm. The testimony shows that Sgt. Tees is attentive and capable in his handling of the children but there was some evidence that Mrs. Tees had not been able to give them very good care. We think no useful purpose would be served by detailing this evidence, but will only state that the jury may well have concluded from it that the children's best interest would be served by placing them with their father.

Appellant's second point of error is that the trial court erred in not granting a new trial because an agreement between her former attorneys and Harold Tees' counsel prevented the jury from hearing evidence that Harold Tees is now, has been, or will be addicted to heroin.

The appellant testified at the hearing on the motion for new trial that during the trial on the merits Mr. Roy Mease, who was then representing her, told her that he and her husband's counsel were going to make an agreement not to bring up all the drug problems. She told him she would like to discuss it first. No evidence was offered to prove that her husband was a drug addict; after the verdict was in she asked why it was not brought up and was told that they had made the agreement. Mrs. Tees said she knew the appellee was taking heroin in 1971 and 1972 and had seen him use a hypodermic needle to put it in his arm.

Mr. Michael J. Thibodeaux, attorney ad litem for the minor children, testified that he knew, before the trial began, of Mrs. Tees' contention that Sgt. Tees had had additional problems; a history had been presented to him, he had interviewed both Sgt. and Mrs. Tees, and had information from San Antonio and Harris County authorities. Mrs. Tees did not tell him she had seen Sgt. Tees using drugs, only that she thought he had continued to do so. He thinks there was no agreement not to raise drugs, only a statement by Sgt. Tees' counsel that if it is going to be raised he wanted to mention it on voir dire. Mr. Thibodeaux did not raise the drug issue in the trial because he had interviewed every witness called in the case and had not heard of any indication of drug involvement since the last part of 1971 or early 1972. The Family Service Center had information that Sgt. Tees had been addicted to drugs when he was in Viet Nam and had "kicked the habit."

Mr. B. N. Trank testified. He was lead counsel for Mrs. Tees at the trial. He discussed with Sgt. Tees' attorney the drug involvement matter.

"I believe it was our understanding, although I knew there was no enforceable agreement, that the matter of drugs would not be entered into. I felt with my knowledge of the case, and *without*

[with what?] my client had explained to me about the case, that it was not in her best interest to go into it. I would not be justified at this time to explain why unless Mrs. Tees would be inclined to not claim the attorney-client privilege."

He had been informed that Sgt. Tees had used heroin, and at the time of trial had reason to believe that there was some type of heroin involvement. The discussion about the drugs took place prior to trial in Judge Woodall's chambers. His understanding was that if the lawyers representing Mrs. Tees did not ask Sgt. Tees questions about his use of drugs then opposing counsel would not ask Mrs. Tees about her use of them. He had no indication of any recent drug usage by either party.

Mr. Roy Mease, another former attorney for Mrs. Tees, testified. When they went into the judge's chambers he was asked by opposing counsel if he was going to bring up drug involvement. He said he doubted that he would but that he thought the witnesses would bring it out. There wasn't any binding, iron-clad agreement. They discussed "her involvement and his involvement and what we would accomplish." He wasn't under any order and was sure that Mr. Trank, who handled the case, would have gone into it if he had wanted to. ". . . Unless my client is willing to waive the client-attorney relationship, I cannot go into why we actually would have gone into them or would not have gone into them or what our problem was." He said he was sure that Mrs. Tees was aware they were entering into an agreement with opposing counsel about drugs.

The appellant argues that an unauthorized act of an attorney, however innocent, may be the basis upon which a court may grant a new trial. She cites *McMillan v. McMillan*, 72 S.W.2d 611 (Tex.Civ.App.1934, no writ), but we do not find it persuasive. In that case the court said:

"While the negligence of one's attorney usually affords no relief, yet when such negligence is so connected with an unauthorized act of an attorney, in agreeing to

a judgment and premature issuance of a writ of possession in which the adverse party is shown to have been implicated, we feel that such warranted the conclusion that the aggrieved party was not afforded a fair hearing. The power to grant the application, when justice requires it, is inherent in all courts of common-law jurisdiction."

■ We hold that the evidence supports the trial court's implied findings that the appellant has not shown harm, that there was no binding agreement, and that the decision not to bring up the drug involvement was trial strategy on the part of appellant's counsel that may have been made in her best interest. We cannot determine the facts behind their decision since Mrs. Tees did not waive her privilege under the attorney-client relationship. Further, the evidence in question was not newly-discovered, and she was made aware before her attorneys rested her case that they contemplated offering no evidence on the subject. There is no contention of improper conduct on the part of the appellee or his counsel that induced the omission complained of. There was evidence that Mrs. Tees did not raise the question until after the jury had returned an adverse verdict.

In *Hicks v. Brooks*, 504 S.W.2d 942 (Tex. Civ.App.1974, writ ref. n. r. e.), the court stated:

"It is well settled that a court of equity will not set aside a final judgment when the failure to have a full presentation of the case resulted from the negligence, inadvertence or mistake either of the party seeking the relief or by his counsel. *Kelly v. Wright*, 144 Tex. 114, 188 S.W.2d 983 (1945); *Jones v. Jones*, 391 S.W.2d 102 (Tex.Civ.App.—Amarillo, 1965, n. w. h.). The failure on the part of appellants or their attorney to fully develop the available evidence would not constitute 'good cause' authorizing a new trial.

" 'A motion for new trial is not a vehicle through which the case may be tried over or tried differently.' *Crossley v. Crossley*, 306 S.W.2d 388 (Tex.Civ.App., San Antonio, 1957, n. w. h.)."

The judgment of the trial court is affirmed.