Robert L. LEWIS, Individually and d/b/a
Robert L. Lewis Delivery Service, et
al., Appellants,

v.

Ernest E. YAGGI et al., Appellees.

No. 1216.

Court of Civil Appeals of Texas,
Tyler.

June 14, 1979.

Rehearing Denied July 12, 1979.

Mike Hatchell, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Jack W. Flock, Tyler, W. B. Fields, Fields, Fields & Hardee, Athens, Luther C. Johnson, (Gdn. ad Litem) Palestine, for appellants.

Charles B. Guy, Dallas, Don A. Weitinger, Houston, for appellees.

McKAY, Justice.

This is an appeal in a personal injury suit on the grounds of jury misconduct and a conflict in the jury's answers to special issues.

In the early morning of July 24, 1974, on a highway about four miles south of Palestine, a van collided with a Continental Trailways bus. Edwin M. Massengale, the driver of the van, was employed by the Robert L. Lewis Delivery Service making bulk delivery of newspapers. Ernest E. Yaggi was the bus driver, on a Houston-to-Texarkana route. Massengale was killed and Yaggi injured (primarily a broken knee) in the accident.

Yaggi and his wife brought suit against the A. H. Belo Corporation; The Dallas Morning News (an unincorporated subsidiary of Belo); Massengale's estate; Pauline Massengale (decedent's widow), individually and as community survivor, representative of the estate, and heir; and Julie Massengale (daughter of decedent), individually and as heir. Apparently Robert L. Lewis, individually and d/b/a Robert L. Lewis Delivery Service and Robert L. Lewis Transportation Company, was later added as a defendant. Yaggi alleged various acts of negligence by Massengale and damages totaling $40,000.

The Massengale defendants filed a cross-action against Yaggi and added Continental as a third-party defendant, alleging various acts of negligence by Yaggi and claiming damages totaling $404,558.75. Continental filed its cross-action against all of the defendants, alleging damages to its bus, including loss of use, in the amount of $24,-786.35. All of the defendants' answers alleged contributory negligence on the part of Yaggi.

All of the defendants entered pleas of privilege but only those of Belo and The Dallas Morning News were sustained. The cause as to them was severed and transferred to Dallas County.

Hartford Insurance Company intervened to recoup workmen's compensation benefits ($8,748.27) paid to Yaggi. Texas Employers Insurance Association intervened to recoup benefits ($9,131.00) paid for Massengale's death.

Following a stipulation by the defendants that any negligence on the part of Massengale was to be imputed to the Robert L. Lewis Delivery Service, Yaggi and Continental took a nonsuit in their actions against the Massengale defendants.

Trial was had before a jury which found Massengale negligent in failing to keep a proper lookout, failing to apply his brakes, and changing lanes when it was unsafe to do so. With regard to Yaggi, the jury found: he did not fail to keep a proper lookout; he did not fail to apply his brakes; he did fail to avoid the collision but this was not negligence; he did drive in excess of 55 mph but this was not negligence; he did not drive in the left lane; he did drive after consuming alcoholic beverages (apparently he had had two beers) but this was not negligence. It was further found that the percentage of negligence attributable to Massengale was 70% and to Yaggi, 30%. Yaggi's damages were found to be $12,175 and the Massengales', $76,100.

The trial court entered judgment for Continental and Yaggi, jointly and severally, against Lewis for $12,175.00; for Continental against Lewis for $15,211.35 (amount stipulated as damages to the bus); that the Massengales and Texas Employers take nothing; and for Julie Massengale's guardian ad litem against Lewis for $1,500 in attorney's fees. An amended motion for new trial, which asserted jury misconduct as well as attacking the findings of the jury, was overruled.

The Massengales, Lewis, and Texas Employers appeal, bringing five points of error. The first four concern alleged jury miscon-

duct. The jury foreman allegedly was told, by another venireman, during voir dire, that Mrs. Massengale had refused a settlement offer of $70,000. The foreman then allegedly failed to reveal this when asked if he knew anything about the case, and informed at least one other juror of this during deliberations. The information allegedly was ultimately received by several jurors. Further, statements were said to have been made in the jury room that Mrs. Massengale would probably remarry and would not need the money she had prayed for, and that any recovery she might receive would be divided between her attorneys. Point one complains of error by the trial court in overruling the motion for new trial because the jury was probably caused to return its verdict due to the aforementioned alleged acts of misconduct. Point two asserts error in overruling the motion because the foreman failed to reveal that he had received information about the case before being sworn in as a juror. The third point states that any implied finding that the misconduct did not occur at a time when it could be harmful is against the great weight and preponderance of the evidence. Point four complains of error in failing to sustain the motion because the cumulative effect of the alleged misconduct probably caused the rendition of an improper verdict. Appellees reply that it was disputed as to who among the jurors heard the settlement offer statement, when it was made, and whether there was any adverse effect on appellants; appellees also claim the statements concerning remarriage and attorney's fees had no effect on the deliberations, and that the foreman's receiving information regarding the settlement offer did not affect his decision and did not harm appellants. It is further argued by appellees that it must be presumed, in the absence of express findings, that the trial court found all controverted facts in favor of appellees in overruling the motion for new trial.

It will be helpful at this point to detail the testimony given before the trial court at the hearing on appellant's motion for new trial. Four of the twelve jurors testified. The first to testify was Mrs. Elizabeth Beard, who was called by appellants. She testified that after the jury had gone to the jury room for their deliberations, Olan Campbell was elected foreman; that before any deliberations had commenced the foreman made a statement that Mrs. Massengale had been offered $70,000 and had refused it; that that statement was made before any questions had been answered, and that it was made only one time; and that the statement was made loud enough so that any person with ordinary hearing capabilities could have heard it. Mrs. Beard further testified that shortly thereafter the jury stood ten-to-two in favor of the bus company and that later those two voted with the other ten so that the verdict returned to the trial judge was unanimous. Mrs. Beard's testimony continued to the effect that a lady juror said that the money (apparently referring to any recovery by Mrs. Massengale) would be divided between Luther Johnston and Boone Fields (two of Mrs. Massengale's attorneys), and that the same lady said that Mrs. Massengale would probably marry again and "She wouldn't need the money all that much." On cross-examination, Mrs. Beard reiterated that Campbell's statement concerning the settlement offer had been made before the jury began considering the special issues. She also testified that it was she and one other male juror who voted initially to place the liability on Yaggi and the bus company; that it appeared to her that the ten jurors wanted to put all the blame on Massengale throughout the course of the deliberations and that she and the other man "just decided to go" with the majority.

The second witness called by appellants was Mrs. Melinda Bridges. She testified that the foreman, during the deliberations, "said that she [Mrs. Massengale] had been offered a settlement which that is what we all figured she had been done [sic]"; that she did not recall how much money was offered (after refreshing her memory from her affidavit, she stated that the amount was $70,000). On cross-examination Mrs. Bridges testified that the first thing that

was done during the deliberations was the election of the foreman and that the next thing that happened was that the foreman read the charge aloud and that as he came to the questions the jury voted on them; that there had been no discussion prior to the foreman's reading of the charge; that in response to the first question the jurors voted ten to two that Massengale was at fault and that up to that point she didn't believe there had been any discussion about the settlement offer; that she didn't know when the statement concerning the settlement offer had been made, but she stated, "I will say it wasn't at the beginning. I don't feel like it was, it was an innocent statement anyway." She later testified again that she didn't know when the statement was made, but that some of the special issues (she could not recall how many) had been voted on and answered when the statement was made. In response to the question, "After this statement was made, at whatever point it was made, did any change any of those questions that had already been answered? [sic]" she answered, "No." On redirect examination, Mrs. Bridges again testified that Campbell's statement was not made at the beginning of the deliberations, and on recross-examination she testified that no one changed his vote after the statement was made. Then, on redirect examination, she stated that two jurors did change their votes at some time during the day.

Appellees' first witness was Durwood Pearson, who testified that the election of the foreman was the first thing done during the deliberations and that then the jury looked at the pictures again and the foreman read the questions and the jury answered them. He could not recall any statement being made about a settlement offer by the bus company. Pearson also testified that at no time were there more than two people who voted that the accident was not the fault of Massengale; that the jury took a recess for lunch and completed their deliberations twenty or thirty minutes after the lunch recess; and that some questions near the end of the charge remained to be answered after lunch. On cross-examination, Pearson answered that during the voir dire of the jury panel, he did not hear Campbell say to any of the attorneys that he (Campbell) had heard of the case or knew anything about the case; and that he could not remember when the first issue was answered.

█ Finally, Olan D. Campbell, the foreman of the jury, was called by appellees and testified that there was no discussion before he began reading the charge; that as he read through the charge the jury would answer each question; that "When we got to the money, they said let's come back to it," and that all the previous questions had been answered at that time. Campbell's testimony continued that no one with Continental gave him any outside information concerning any settlement negotiations; that he heard about the settlement offer from a member of the jury panel sitting next to him during the voir dire examination; that "when we got to the money," Mrs. Neiland, a juror, asked, "How are we going to decide to pay anybody any money when we decide they are not guilty?" and that then he whispered in Mrs. Neiland's ear that the bus company had offered a settlement; that "She was free to tell anybody else. But I did not tell the rest of them. She did." In response to questions on cross-examination, Campbell testified that during the voir dire examination he did not indicate that he knew anything about the case; that he got the statement concerning the settlement offer, before the questioning, from another member of the jury panel who was later excused. In answer to the question, "Why did you not divulge to the Court and to the lawyers you had heard that?" Campbell answered, "Because he didn't convince me of nothing. That's hearsay." Campbell further testified that he made a statement in the jury room that "I had heard that the bus company had offered a settlement of seventy-five thousand dollars"; that he did not make the statement that Mrs. Massengale had turned down the offered settlement; that only Mrs. Neiland had heard his statement; that Mrs. Neiland repeated the statement (he

thought she was speaking to Mrs. Bridges) but that most of the other jurors did not hear it. Campbell also testified that something was said in the jury room concerning whether Mrs. Massengale would marry again, but that "That's just a bunch of bunk"; that he did not know when that was said or who said it. With regard to a statement that there was no use giving Mrs. Massengale any money because her attorneys would get most of it, Campbell could not recall its being made.

Rule 327, T.R.C.P., provides in pertinent part:

"Where the ground of the motion [for new trial] is misconduct of the jury . ., or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved . . . or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

Thus, a party seeking a new trial because of alleged jury misconduct has the burden of establishing to the satisfaction of the court that the misconduct occurred, that it was material, and from the evidence on the hearing of the motion for new trial and the trial of the cause and from the record as a whole, that it was calculated to and probably did result in harm. *Fountain v. Ferguson,* 441 S.W.2d 506, 507 (Tex.1969), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969); *Baucum v. Statewide Hot Shot,* 550 S.W.2d 156, 159 (Tex.Civ.App. —Corpus Christi 1977, writ ref'd n. r. e.); *Kendall v. Southwestern Public Service Company,* 336 S.W.2d 770, 775 (Tex.Civ. App.—Amarillo 1960, no writ). In the instant case, no findings of fact nor conclusions of law were requested by the parties or made by the trial court.

We shall first address foreman Campbell's failure to divulge on the voir dire

examination that he had heard of the purported settlement offer by Continental to Mrs. Massengale. Appellants have not brought to this court as part of the record on appeal a statement of facts of the voir dire examination of the jury panel; thus, we are unable to determine precisely what question or questions pertinent to this matter were put to the panel. Campbell testified that he heard of the purported settlement offer from another member of the jury panel prior to the questioning. On cross-examination he was asked,

"Q . . . You recall my asking and the other lawyers too, asking the jury panel whether they knew anything about the facts, don't you, or words to that effect?

"A Well, facts . . .

"Q Or what purported to be the facts.

"A Yeah.

"Q And you did not indicate, did you, that you knew anything about the case on that morning?

"A Right.

. . . . .

"Q Why did you not divulge to the Court and to the lawyers you had heard that?

"A Because he didn't convince me of nothing. That's hearsay."

Article 2134, V.T.C.S., provides, "Any person who has a bias or prejudice in favor of or against either of the parties" shall be disqualified to serve as a juror in a particular case. The trial court, by overruling the motion for new trial, impliedly found that prejudice did not exist and that the juror was not disqualified. *The Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex. 1963); *Kennbrew v. Levias,* 406 S.W.2d 507, 509 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.). In view of this implied finding, we must consider the evidence in the light most favorable to upholding that ruling. *Kennbrew v. Levias,* supra; *O'Day v. Sakowitz Bros.,* 462 S.W.2d 119, 123 (Tex. Civ.App.—Houston [1st Dist.] 1970, writ ref'd n. r. e.). The questions whether a juror is prejudiced and concealed that fact

are primarily within the sound discretion of the trial court, and its action in denying a motion for new trial based upon juror misconduct will not be revised where it does not clearly appear that the rights of the parties have been disregarded. *El Paso Electric Railway Co. v. Gonzales*, 207 S.W. 162 (Tex.Civ.App.—El Paso 1918, no writ); see also *Zimmerman v. Gianelloni*, 206 S.W.2d 843, 846 (Tex.Civ.App.—Beaumont 1947, no writ); *Ratcliff v. Bruce*, 423 S.W.2d 614, 616 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), cert. denied, 393 U.S. 848, 89 S.Ct. 134, 21 L.Ed.2d 118 (1968); *City of Hawkins v. E. B. Germany and Sons*, 425 S.W.2d 23, 26 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); *Erwin v. Consolvo*, 521 S.W.2d 643, 646–7 (Tex.Civ.App.—Fort Worth 1975, no writ).

Appellants argue that a juror who has received any information about a case prior to the trial thereof is necessarily biased or prejudiced thereby. We do not agree that this is the correct rule. The burden is on the party claiming that a member of the jury failed to reveal his bias or prejudice on voir dire examination to show that such failure to affirmatively answer general questions probably resulted in injury to said party. Rule 327, T.R.C.P.; *Tudor v. Tudor*, 311 S.W.2d 733, 736 (Tex. Civ.App.—Amarillo 1958), writ refused (with opinion indicating only error of law concerned another point not at issue here), 158 Tex. 559, 314 S.W.2d 793 (1958). Furthermore, it has been said that general questions propounded to the jury panel as a whole are usually a poor predicate for a later claim of misconduct by a juror in giving an erroneous or incorrect answer on voir dire examination. *Barron v. State*, 378 S.W.2d 144, 146 (Tex.Civ.App.—San Antonio 1964, no writ).

Appellants cite *Dallas Railway & Terminal Co. v. Kurth*, 247 S.W.2d 930 (Tex.Civ.App.—Dallas 1952, writ ref'd n. r. e.), and *Texas Employers' Insurance Ass'n . Wade*, 197 S.W.2d 203 (Tex.Civ.App.—Galveston 1946, writ ref'd n. r. e.), which hold generally that where there is uncertainty as to the effect of the withheld information on the mind of the juror as to how the undisclosed information might affect his mind, a new trial should be granted. *Kurth*, supra at 932; *Wade*, supra at 210. This rule, however, was clearly abrogated by our Supreme Court in *Childers v. Texas Employers' Insurance Ass'n*, 154 Tex. 88, 273 S.W.2d 587, 588 (1954). In *Thompson v. Quarles*, 297 S.W.2d 321, 326 (Tex.Civ.App.—Galveston 1956, writ ref'd n. r. e.), the court said:

"We are governed by *Childers v. Texas Employers' Insurance Association*, 154 Tex. 88, 273 S.W.2d 587, 588, departing from the contrasting rule announced in *Texas Employers' Ins. Ass'n v. Wade*, Tex.Civ.App., 197 S.W.2d 203; *Traders & General Ins. Co. v. Cossman*, Tex.Civ. App., 212 S.W.2d 865; and *Dallas Ry. & Terminal Co. v. Kurth*, Tex.Civ.App., 247 S.W.2d 930, and holding that under Rules 327, 434 and 503, T.R.C.P., 'The failure of the juror on his voir dire examination to disclose information that he had suffered previous injuries is not the test . . ., unless the evidence shows that he concealed the fact of previous injury . . ., *and that such action resulted in probable injury. . . .*' (Emphasis supplied.)"

See *Houston Belt & Terminal Railway v. Burmester*, 309 S.W.2d 271, 274 (Tex.Civ. App.—Houston 1957, writ ref'd n. r. e.); *Southern Truck Leasing Co. v. Manieri*, 325 S.W.2d 912, 915 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); *Missouri Pacific Railroad Co. v. Cunningham*, 515 S.W.2d 678, 685 (Tex.Civ.App.—San Antonio 1974, no writ). As the court stated in the last-cited case, "In addition, the amendment of Rule 327, T.R.C.P., to specifically provide that one seeking a new trial on the ground that a juror gave an erroneous or incorrect answer on voir dire examination must show probable injury deprives *Kurth* and *Wade* of precedential weight." *Id.* Appellants also cite *General Accident Fire and Life Assurance Corp. v. Coffman*, 326 S.W.2d 287 (Tex.Civ.App.—Waco 1959, writ ref'd n. r. e.); there the court distinguished *Childers* and its progeny, but did so on the ground that the peculiar facts there indisputably showed harm to the complaining party.

Thus, *Coffman* provides no aid to appellants here.

■ In the instant case, we are of the opinion that appellants have failed to meet their burden of showing either that prejudice existed or that they were harmed in any way by Campbell's failure to disclose his knowledge of the purported settlement offer. On the basis of the record before us, we find no abuse of discretion by the trial court in impliedly finding that prejudice did not exist and that the juror Campbell was not disqualified. Appellants' point of error two is overruled.

■ We now turn to the allegations of jury misconduct concerning Campbell's repeating the statement about a settlement offer in the jury room during the deliberations. It is the general rule that the question of whether an overt act of misconduct occurred in the jury room is a question of fact, but the question of whether the misconduct resulted in injury to the complaining party or affected the verdict of the jury is a question of law. *City of San Antonio v. McKenzie Construction Co.*, 136 Tex. 315, 150 S.W.2d 989, 992 (1941); *Minor v. Gross*, 478 S.W.2d 597, 601 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.); *Blossman v. State*, 482 S.W.2d 937, 943 (Tex.Civ.App.—Corpus Christi 1972, no writ). Where there is a conflict in the evidence concerning whether misconduct occurred, the decision of the trial court on that question of fact is final and binding on the reviewing court. *Brawley v. Bowen*, 387 S.W.2d 383, 384 (Tex. 1965); *City of San Antonio v. McKenzie Construction Co.*, supra. In the absence of findings of fact or conclusions of law being filed concerning the hearing on a motion for new trial based upon alleged jury misconduct, we must presume that the trial court did not find that jury misconduct occurred, that it was material, or that it probably caused harm. *Brawley v. Bowen*, supra; *Naranjo v. Cull*, 569 S.W.2d 529, 531 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Tees v. Tees*, 546 S.W.2d 912, 915 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). The implied finding of no misconduct is not binding on appeal and the

aforesaid presumption regarding the fact of occurrence of misconduct does not obtain, however, where the uncontroverted evidence demonstrates that the misconduct did occur. *Naranjo v. Cull*, supra; *Rodman Supply Co. v. Jones*, 370 S.W.2d 951, 954 (Tex.Civ.App.—Amarillo 1963, no writ). Here, it is not disputed that the remark about a settlement offer was, in fact, made. Nevertheless, the presumption that the trial court found all other controverted facts in support of its ruling remains. See *Brawley v. Bowen*, supra; *Fields v. Texas Employers' Insurance Ass'n*, 565 S.W.2d 327, 329 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.); *FLR Corp. v. Blodgett*, 541 S.W.2d 209, 216 (Tex.Civ.App.—El Paso 1976, writ ref'd n. r. e.), appeal dismissed and cert. denied, 434 U.S. 915, 98 S.Ct. 386, 54 L.Ed.2d 273 (1977).

■ Once it has been determined that an act of misconduct has occurred, the inquiry turns to the question of materiality and probable injury. There is a difference between condemning an act as misconduct and determining that such misconduct destroys the verdict. 3 McDonald, Texas Civil Practice sec. 14.09 at p. 559 (1970) (hereinafter cited as "McDonald"); *Minor v. Gross*, supra. Misconduct is material only when it is reasonably calculated to prejudice the rights of the complainant. Here again the trial judge is best equipped to judge the potentialities of prejudice from misconduct and his decision is to be given great weight, but this is a question of law, and as such, is freely reviewable. 3 McDonald sec. 14.16.3 at pp. 579–80.

■ The point in time during jury deliberations at which misconduct occurs is an important factor in determining the probability of injury. *Fountain v. Ferguson*, supra at 508. Improper jury conduct which occurs after the jury has answered the issues which might have been affected thereby is not reasonably calculated to affect the verdict and is not reversible error. *Norman v. First Bank & Trust, Bryan*, 557 S.W.2d 797, 804 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n. r. e.); *Navar v. State*, 344 S.W.2d 188, 192 (Tex.Civ.App.—El Paso

1961, no writ). In the instant case, the time at which the statement was made about the purported settlement offer is disputed. Mrs. Beard testified that it was made before the reading of the charge; Mrs. Bridges said some of the special issues had been answered and that the statement was not made at the beginning of the deliberations; Campbell testified that the statement was made during deliberations on the damages issues, i. e., after the liability issues had been answered.

 In passing on questions of fact as to which there is conflicting testimony, at the hearing on a motion for new trial based upon alleged jury misconduct, the trial court has the same latitude in determining the credibility of witnesses and the weight to be given their testimony as the jury had on the trial of the original cause. *Monkey Grip Rubber Co. v. Walton*, 122 Tex. 185, 53 S.W.2d 770, 773 (1932, opinion adopted); *Price v. Biscoe*, 141 Tex. 159, 170 S.W.2d 729, 731 (1943, opinion adopted); *State v. Walker*, 334 S.W.2d 611, 614 (Tex.Civ.App.—Texarkana 1960, no writ). Thus the court may accept or reject all or any part of the testimony of any witness. 3 McDonald sec. 14.16.2 at p. 575, quoting from *Edens-Birch Lumber Co. v. Wood*, 139 S.W.2d 881, 891–2 (Tex.Civ.App.—Beaumont 1940, writ dism'd, judgment correct).

We must presume that the trial court resolved this issue in support of its implied ruling that no harm resulted from the statement, and we hold that the trial court did not abuse its discretion in so doing and that it did not do so against the great weight and overwhelming preponderance of the evidence. There is sufficient evidence to support the implied finding by the court below that the statement by Campbell concerning a settlement offer was made at a time during the deliberations when it could not have harmed appellants. Point of error three is overruled.

Even if we be in error in this, however, there are sufficient other bases on which to uphold the action of the trial court. Specifically, in determining whether improper conduct was material and probably caused

injury, we may consider such matters as the nature of the conduct, the significance of the conduct, the presence or absence of a rebuff, whether the statements were asserted as fact or opinion, the time the misconduct occurred, whether there was a change in vote after the misconduct, and the duration of the deliberations. *Reese v. Brittian*, 570 S.W.2d 528, 533 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.); see also 3 McDonald sec. 14.16.5 at p. 584. Also very significant is the presence or absence of discussion of the improper matters. Pope, Jury Misconduct and Harm, 12 Baylor L.Rev. 355, 364 (1960); see, e. g., *Roming v. McDonald*, 514 S.W.2d 129, 130 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.). In the instant case, the offending statement concerning a purported settlement offer was, at most, made once and repeated once. There is no evidence of a discussion of the matter among the jurors. As the court said in *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646, 649–50 (1957), "the bare statement itself is not persuasive evidence that it probably controlled the votes of those who heard it," and "we cannot presume that they were affected." With regard to the nature and significance of the statement, we feel it is questionable whether the statement was prejudicial to appellants. Appellees argue convincingly that the statement could have had a prejudicial effect only against Continental and Yaggi, the purported offer being taken, in its natural import, as an admission of liability on the part of Continental. Appellants argue that it was detrimental to them in that it generally prejudiced the jury against them, in that the alleged refusal of the offer was unreasonable or "greedy," the jury could have believed that Mrs. Massengale would be entitled to the settlement even after trial, and the amount found as damages sustained by Mrs. Massengale and her daughter (in separate issues) was approximately the same as the amount purportedly offered. The relevance of the statement made to these possible detrimental effects on appellants, however, is at best remote and inferential. Appellants argue that the statement itself was so prejudicial as to

obviate the requirement of a showing of harm. We find no merit in this contention.

The remark concerning Mrs. Massengale's probable remarriage and resultingly lessened requirement for money and the remark concerning the dividing of any recovery between two of her lawyers were said by Mrs. Beard to have been made by an unnamed woman juror, apparently after the jury's lunch recess. Campbell at first denied that the statement about remarriage was made, then later testified that he had heard it but could not recall when it was made; he did not recall the statement concerning attorney's fees. Mrs. Bridges and Pearson were not questioned concerning either remark. With regard to the alleged statement about attorney's fees, a fact question as to its occurrence was presented which the trial court impliedly resolved against its having been made. *United States Fidelity & Guaranty Co. v. Turner*, 390 S.W.2d 302, 303–4 (Tex.Civ.App.—Texarkana 1965, writ ref'd n. r. e.); *Bailey v. Rains*, 485 S.W.2d 837, 841 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.). We are bound thereby. *Brawley v. Bowen*, supra. Even if we be in error concerning the occurrence of misconduct, however, we do not feel that these statements were harmful. The maker of the statements was not identified and was not called as a witness, and they were made but once with no discussion of the matters alluded to. The trial court impliedly found that they were made at a time when they would not have been harmful. See 3 McDonald sec. 14.16.4 at p. 581. Mere passing mention of attorney's fees during jury deliberations has been held insufficient to require a new trial. *McCarthy Oil & Gas Corp. v. Cunningham*, 255 S.W.2d 368, 371–2 (Tex.Civ.App.—Galveston 1953, writ ref'd n. r. e.); *City of Fort Worth v. Estes*, 279 S.W.2d 687, 689 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n. r. e.); see also *General Motors Corp. v. Hopkins*, 535 S.W.2d 880, 891 (Tex.Civ.App.—Houston [1st Dist.] 1976), affirmed, 548 S.W.2d 344 (Tex.1977); *Missouri Pacific Railroad Co. v. Vann*, 384 S.W.2d 385, 389 (Tex.Civ.App.—Beaumont 1964, writ ref'd n. r. e.). In *Pittman v. Baladez*, 304 S.W.2d 601, 608

(Tex.Civ.App.—Austin 1957), reversed on other grounds, 158 Tex. 372, 312 S.W.2d 210 (1958), mention of both attorney's fees and insurance was held harmless.

Most importantly on the question of harm, there was no evidence tending to show that the verdict was tainted by the statements. Rule 292, T.R.C.P., provides, "A verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten members of an original jury of twelve . . . ." It is evident from the testimony of all four jurors that at no time did more than two jurors vote to place the liability upon Yaggi, that the ten jurors who voted to place the liability upon Massengale did not change their votes on liability issues throughout the deliberations, and that the two only voted with the ten at the end of the deliberations. Thus, appellants have shown neither materiality of any misconduct, nor harm therefrom. *Tees v. Tees*, supra at 916. While jurors cannot receive evidence outside the record, it must be shown that others were probably influenced by the remark before reversal is required. *Mrs. Baird's Bread Co. v. Hearn*, supra; *State Highway Dept. v. Pinner*, 531 S.W.2d 851, 857 (Tex.Civ.App.—Beaumont 1975, no writ).

We are aware that a number of instances of misconduct during jury deliberations, though harmless if taken separately, may, in combination, call for a reversal. *Sproles Motor Freight Lines, Inc. v. Long*, 140 Tex. 494, 168 S.W.2d 642, 645 (1943). Manifestly, however, this rule does not abrogate the requirement to prove probable injury, caused by the several acts of misconduct. Rule 327, supra; see *Walker v. Thompson*, 287 S.W.2d 556, 558 (Tex.Civ.App.—San Antonio 1956, writ ref'd n. r. e.); *Sims v. McKnight*, 420 S.W.2d 173, 178 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.); *Cargo Ships & Tankers, Inc. v. McDonald*, 435 S.W.2d 866, 875 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.); *King v. Smith*, 482 S.W.2d 388, 390 (Tex.Civ.App.—Eastland 1972, no writ); *Landreth v. Reed*, 570 S.W.2d 486, 491 (Tex.Civ.App.—Texarkana 1978, no writ).

In determining whether alleged jury misconduct was material and resulted in probable injury, both the trial and reviewing courts must examine the record as a whole, i. e., any and all parts of the record which may throw light on the question of injury, including the evidence heard during the main trial as well as that adduced at the hearing on the motion for new trial. Rule 327, supra; *Fountain v. Ferguson,* supra at 508; *Willrodt v. Union City Transfer,* 258 S.W.2d 443, 446 (Tex.Civ.App.— Fort Worth 1953, writ ref'd n. r. e.). Having reviewed the entire record, we find no basis for holding the trial court in error. Appellants have the obligation to show that, on the record of the entire case, they were probably harmed by the alleged acts of jury misconduct. They do not, however, refer to any evidence adduced on the trial in chief. Having failed to point out the evidence which would support their contention that they were entitled to a verdict in their favor, appellants have failed to meet their burden of showing, on the whole record, that they were probably deprived of such a verdict by the alleged misconduct. *Sims v. McKnight,* supra at 178–9. Stated differently, to say that the alleged misconduct probably caused the rendition of an improper verdict, we would be first compelled to conclude from the record as a whole that, but for the alleged misconduct, the jury would probably have answered the liability issues in such a fashion as to impose liability on Yaggi and Continental. It is not enough to say that the jury might possibly have done so. After a review of the entire record, we do not believe we would be justified in concluding that but for the alleged jury misconduct, the jury would have probably answered the special issues in a manner favorable to appellants. *Sendejar v. Alice Physicians and Surgeons Hospital, Inc.,* 555 S.W.2d 879, 888 (Tex.Civ. App.—Tyler 1977, writ ref'd n. r. e.). See also *Trousdale v. Texas & New Orleans Railroad Co.,* 154 Tex. 231, 276 S.W. 242, 245 (1955).

Having carefully reviewed the several cases cited by appellants for their contention that the statements here caused them harm, we are of the opinion that they are not relevant here. In each, we find either support for appellees' position in this appeal or instances of misconduct glaringly more serious than those with which we are concerned here.

Weighing all of the factors bearing on the existence of harm, we are of the opinion that it is not probable that the acts of misconduct alleged here, taken singly or in combination, affected the verdict or caused any injury to appellants. Appellants' points of error one and four are overruled.

In their final point of error, appellants contend that the trial court erred in entering judgment on the verdict because of an alleged conflict in the jury's answers to the special issues. As noted previously, the jury found three instances of negligence on the part of Massengale and exonerated Yaggi of actionable negligence. Then special issue 16 was answered as follows:

"What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties *found by you to have been negligent*?

"The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

"Answer by stating the percentage, if any, opposite each name.

"Edwin M. Massengale '70' %
"Ernest E. Yaggi '30' %"
[Emphasis added.]

The test to be applied in a situation where there are conflicting answers in a verdict is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant. In applying this test, we must consider each answer claimed to be in conflict, disregarding the other conflicting answer but considering the rest of the verdict, and if so considered, one of the answers would require judgment in favor of the plaintiff and

the other would require judgment in favor of the defendant, then the answers are fatally in conflict. Thus, the party seeking to set aside a verdict on the ground of conflicting answers has the burden of showing that one of the conflicting answers, plus the rest of the verdict (disregarding the other conflicting answer), requires entry of a judgment different from that entered. *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 991 (1949); *Southern Pacific Transportation Co. v. Bender*, 582 S.W.2d 568 (Tex.Civ.App.—Tyler, 1979). Applying this test to the instant case, it is manifest that there is no fatal conflict between or among the jury's answers.

 A second basis for the same conclusion is that the specific finding concerning liability controls over the general finding of comparative negligence. *Tennessee Gas Pipeline Co. v. Hartman*, 556 S.W.2d 616, 619 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Ingles v. Cohen*, 543 S.W.2d 455, 457 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.). Appellants urge us to follow Wisconsin cases said to be authority for a holding of fatal conflict in a situation such as that presented here. That we refuse to do in the face of Texas case authority in point. Appellants argue further that *Bradford v. Arhelger*, 161 Tex. 427, 340 S.W.2d 772 (1960), renders *Tennessee Gas* and *Ingles* incorrect. We find no merit in this contention. *Bradford* modified the *Little Rock* rule, repeated above, to provide for the situation where its application would result in an inability to enter judgment for either party, in which event *Bradford* decreed that the verdict would not be permitted to stand. It did not abrogate the rule of *Little Rock*, however, and here its qualification of that rule is not applicable. See *Ross v. Whiteside*, 356 S.W.2d 497, 498 (Tex.Civ.App.—Eastland 1962, no writ); *Gray v. L–M Chevrolet Co.*, 368 S.W.2d 861, 866–7 (Tex. Civ.App.—El Paso 1963, writ ref'd n. r. e.). Whether appellants' contention that *Bradford* involved a conflict between specific and general findings is valid (there, the jury found specific acts of negligence by both parties and that the accident was unavoidable—this was held to be a fatal con-

flict), is immaterial here, for we base our conclusion that there is no fatal conflict here on the rule of the *Little Rock* case, supra. Appellants' fifth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.